George E. MYERS, Petitioner-Appellant,

v.

STATE OF WASHINGTON et al.,
Respondents-Appellees.

No. 80–3031.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided May 26, 1981.

As Amended May 28, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 8, 1981.

**356**

Samuel D. Ellis, San Francisco, Cal., for petitioner-appellant.

David R. Minikel, Olympia, Wash., for respondents-appellees.

Before PREGERSON, POOLE, and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

George E. Myers appeals from the district court's denial of his petition, pursuant to 28 U.S.C. § 2254, for habeas corpus relief. Appellant advances several challenges to his conviction of second-degree murder in a 1957 Washington state trial.

## I.

On the morning of May 18, 1957, passersby discovered the body of Sigurd Oliver lying in a ditch in Kings County, Washington. Two days later, Myers was arrested. After a three and one-half hour session of police interrogation, Myers signed a statement admitting that he had beaten Oliver with his fists and a heavy metal object and left him lying alongside the road. The next day, in a television broadcast, Myers repeated essentially the same confession to a television news reporter.

Myers was tried in September 1957. The statement he signed was admitted into evidence against him. Myers testified at his trial, stating that he had beaten Oliver after Oliver had made a homosexual advance toward him. Myers was found guilty of murder in the second degree, and his conviction was affirmed on appeal. *State v. Myers*, 53 Wash.2d 446, 334 P.2d 536 (1959).

Two decades after his trial, Myers petitioned the Washington Supreme Court for release from personal restraint,[1] raising

1. In 1976, the Washington Supreme Court promulgated new Rules of Appellate Procedure (RAP). RAP 16.3—16.15 created a new, unified procedure, called a "personal restraint petition," that superseded the writ of habeas corpus and the application for post-conviction relief. The principles applicable to habeas continue to guide Washington courts in considering personal restraint petitions. *Petition of*

five grounds for setting aside his conviction. These were that: (1) his signed confession was involuntary and thus inadmissible; (2) he had been prejudiced by inflammatory publicity during the trial; (3) the prosecution failed to disclose favorable material evidence before trial; (4) he was denied counsel during the pretrial television interview; and (5) the jury instructions unconstitutionally shifted to the defense the burden of persuasion as to the intent element of the offense. *Petition of Myers*, 91 Wash.2d 120, 587 P.2d 532 (1979).

Myers had not raised any of these contentions in his direct appeal. The Washington Supreme Court held that this procedural default barred Myers from relying on the first four grounds in his collateral attack on his murder conviction. As to the allegedly unconstitutional jury instructions, the court acknowledged that "a slightly different question is presented," 91 Wash.2d at 123, 587 P.2d at 533, since the controlling law had changed many years after Myers had been convicted. But the court concluded that "the interest of the state in achieving a final judgment not subject to the frustrations associated with retrial years after the original proceeding outweighs any interest in readjudicating convictions according to subsequently developed legal standards," and therefore held that "failure to identify errors at trial or prosecute them on appeal" foreclosed raising them for the first time on collateral attack. *Id.* at 125–26, 587 P.2d at 535.

In January 1979 Myers filed a section 2254 petition in the United States District Court for the Eastern District of Washington, raising the same five grounds rejected by the state court. The State moved for summary judgment, arguing that Myers was not "in custody" under the murder conviction,[2] that the delay in raising the issues barred relief, and that the allegations of error lacked merit. The district court granted the State's summary judgment motion, and Myers appealed.

## II.

Our consideration of this appeal must begin with the Supreme Court's ruling in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). There a state prisoner sought habeas corpus, arguing that because he had not understood the *Miranda* warnings, it was error to admit certain inculpatory statements at his trial. No objection to admitting those statements had been made at the trial, and the Supreme Court held that this failure to comply with the state's contemporaneous-objection rule[3] was an independent and adequate state procedural ground sufficient to bar federal habeas review absent a showing of "cause" for the failure and actual "prejudice" to the petitioner from the alleged constitutional violation.

Washington enforces a similar procedural rule on the appellate level: "issues which could have been raised on appeal but were not, may not be used as grounds for a collateral attack on a criminal judgment." *Petition of Myers*, 91 Wash.2d 120, 122, 587 P.2d 532, 533 (1979). We must decide whether appellant's failure to comply with this rule is an independent and adequate state procedural ground precluding federal habeas review. Under the "cause and prejudice" standard of *Sykes*, we believe that we are in fact precluded from considering the merits of all but one of appellant's contentions.

(A) *The confession*: Appellant claims that his signed confession was involuntary. In 1957, when appellant was tried, it was already well-settled law that involuntary confessions could not be admitted into evidence, and that reviewing courts would independently scrutinize "the totality of the circumstances" surrounding a confession, *Fikes v. Alabama*, 352 U.S. 191, 197, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957), to de-

---

*Myers*, 91 Wash.2d 120, 121 n.1, 587 P.2d 532, 532 n.1 (1979).

**2.** The State has abandoned this argument in the instant appeal.

**3.** Florida's rule required motions to suppress a defendant's inculpatory statements to be made at trial or not at all. 433 U.S. at 86, 97 S.Ct. at 2506.

termine whether the confession was "the product of sustained pressure by the police" that had "overborne" the defendant. *Watts v. Indiana,* 338 U.S. 49, 53, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).[4] Appellant has presented no explanation for his failure to raise the voluntariness issue on appeal, and has thus failed to supply the "cause" showing required by *Sykes.*

■ (B) *Publicity during trial* : Appellant points to a newspaper article, appearing the evening after the first day of his trial, that described him as a "confessed slayer" and the victim as "father of seven children." Neither the "cause" nor the "prejudice" prong of *Sykes* is satisfied as to this ground for habeas.

Appellant cites four cases in his discussion of prejudicial publicity. Two of these were decided prior to his appeal. *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1958); *Griffin v. United States,* 295 F.2d 437 (3d Cir. 1924). No "cause" has been given why appellant did not raise the issue of prejudicial publicity on his appeal—a default all the more surprising because he did raise the issue at trial.

Nor has appellant demonstrated actual "prejudice" from the trial court's failure to grant a mistrial after a poll of the jury revealed that three jurors had seen the newspaper article. A news item publicizing in a brief and unsensational manner the fact that Myers had confessed could hardly have worked great prejudice to him when his confession itself was admitted at trial and corroborated by his own testimony.

■ (C) *Suppression of Evidence* : Appellant contends that the coroner's report,

furnished to the defense before trial, did not indicate when the victim died. Only at trial, he says, did he learn that the coroner believed that the death occurred some two to three hours after the victim was beaten, not immediately afterwards (as appellant claims the police had told him).

We leave aside the question whether this course of events actually amounted to suppression of evidence.[5] What is decisive is that appellant has not made an adequate showing of "prejudice" from the alleged suppression. The assistant coroner who performed the autopsy on Sigurd Oliver testified at trial that he believed death had probably occurred between three and four A.M. Trial Transcript at 120. On cross-examination, appellant's counsel was able to convey his theory that Oliver's death could have resulted from being struck by an automobile sometime after the beating. *Id.* at 121–22. And the defense counsel was able to exploit the apparent time lapse between the beating and the death in his closing argument. *Id.* at 275–76. Appellant's only argument now is speculation that, had he known of the time-of-death findings even earlier, he could have exploited that time lapse more effectively. We do not believe that argument adequately demonstrates actual prejudice to appellant.

■ (D) *Lack of counsel* : Appellant complains that he was not represented by counsel when he made inculpatory statements during a television interview broadcast the day after he signed his confession (and four months before trial). We will not dwell on the merits of appellant's novel characterization of the television interview as "a public hearing and a significant stage

4. *See also Harris v. South Carolina,* 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949); *Turner v. Pennsylvania,* 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); *Malinski v. New York,* 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

5. The cases on which appellant relies all involved withholding by the prosecution of infor-

mation that the defense had explicitly requested. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) (items withheld despite request for all written statements police had taken from witnesses); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (accomplice's exculpatory pretrial statement withheld despite request for all of his statements); *United States v. Coppola,* 526 F.2d 764, 774–75 (5th Cir. 1975) (tardy production of information requested by defendant).

in the process which ultimately led to petitioner's incarceration." We simply observe that appellant has not made out the showing of "prejudice" demanded by *Sykes* with respect to the interview. At most, that interview publicized the fact that appellant had confessed—but since the signed confession itself was introduced in evidence at trial, and was corroborated by appellant's own testimony, it is hard to see how he was prejudiced by the broadcast.

(E) *The jury instructions*: As the Washington Supreme Court recognized, appellant's challenge to the constitutionality of certain jury instructions given at his trial creates problems different from those raised by his other contentions. *Petition of Myers*, 91 Wash.2d at 123, 587 P.2d at 533 (1979). The contention that the jury instructions at appellant's murder trial violated due process is based on recent decisions invalidating instructions that shift to the defense the burden of persuasion as to any element of the crime charged. *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *State v. Roberts*, 88 Wash.2d 337, 562 P.2d 1259 (1977). When Myers was tried for murder in 1957, such instructions were considered proper. Thus the due process contention now before us was not raised at the trial or on appeal.[6] Washington's procedural rule barring a criminal defendant from using an issue not raised on appeal as grounds for collaterally attacking a conviction thus precluded Myers from successfully challenging the jury instructions in the state personal restraint proceeding. Although willing to review on direct appeal constitutional issues not raised at trial, the Washington Supreme Court believed it inappropriate to waive its procedural rule "[w]hen the claimed error is raised by way of collateral attack on the judgment." *Petition of Myers*, 91 Wash.2d at 124, 587 P.2d at 534.

We begin by noting that the procedural default involved in the instant case differs in an important respect from that in *Sykes*. Here we have a failure to raise on appeal a constitutional issue that had not yet been identified, not a failure to object at trial to an alleged error that should have been apparent at the time. Whether the rule announced in *Sykes* should extend to such a default is doubtful.

The *Sykes* opinion identified a number of important interests that would be advanced by requiring compliance with a state's contemporaneous-objection rule as a precondition to obtaining federal habeas relief. Such a requirement "enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest" and "enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for properly deciding the federal constitutional question." 433 U.S. at 88, 97 S.Ct. at 2507. *Not* enforcing the contemporaneous-objection rule, the Court feared, "may encourage 'sandbagging' on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off." *Id.* at 89, 97 S.Ct. at 2507. And insisting on contemporaneous objection is desirable because it "encourages the result that [state trial] proceedings be as free of error as possible." *Id.* at 90, 97 S.Ct. at 2508.

■ None of these considerations has any force in dealing with a situation like the appellant's, where the alleged procedural default consists of failure to raise on appeal constitutional issues that were unknown at the time the appeal was taken. It may be perfectly reasonable to conclude, as the *Sykes* Court did, that "[i]f a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every

---

**6.** On appeal, Myers did attack two of the instructions, but on the entirely different ground that they constituted a comment on the evidence. *State v. Myers*, 53 Wash.2d 446, 334 P.2d 536 (1959).

reason for his following state procedure in making known his objection." *Id.* But it is quite unreasonable to insist that where a criminal defendant does *not* believe the trial court has violated his constitutional rights—and indeed would have no reason to believe so unless he were able to anticipate how constitutional law would evolve over the next twenty years—he must nevertheless object either at trial or on appeal. Nor is it plausible to fear "sandbagging" in a case where the defense attorney in preparing an appeal omits what appears at the time to be a futile constitutional argument. In such a situation, to enforce Washington's rule against raising on collateral attack issues not raised on direct appeal would, if it achieved anything at all, simply encourage defense attorneys to raise on appeal every conceivable constitutional challenge that might some day be accepted—and thus overload their briefs with unmeritorious issues.

Thus, the reasons given in *Sykes* for enforcing a state contemporaneous-objection rule presuppose that the defendant had reason to believe during the trial that the trial court had violated his rights. In this case the defendant had no reason at the time of trial to believe his rights had been violated by the jury instructions. Therefore, we have little trouble concluding that federal habeas review should be available.

Assuming, however, that the *Sykes* rule does apply to appellant's failure to raise his constitutional objection to the jury instructions on direct appeal, appellant has made out a showing of "cause" and "prejudice" sufficient to satisfy that rule and overcome the bar to federal habeas review. "Cause" for appellant's failure to raise his constitutional argument on direct appeal exists because that argument depends on changes in the prevailing law on presumptions and burdens of proof occurring many years after the appeal. The Sixth Circuit recently confronted the question whether the "cause" prong of *Sykes* was met where state decisional law on burdens of proof had changed after the habeas petitioner's trial. In answering affirmatively, the Sixth Circuit explained that "[a] defendant cannot be expected to predict a change in the interpretation of state law when the law is so well-established and there has been no hint of change." *Isaac v. Engle,* 646 F.2d 1129, at 1133 (6th Cir. 1980) (en banc) (plurality opinion).[7] By the same token, appellant in the instant case could not be expected to predict a change in settled federal constitutional law, and had adequate "cause" for not anticipating such a change on direct appeal.

The "prejudice" prong of *Sykes* is satisfied in this case because of the crucial role the challenged jury instructions could have played in securing appellant's conviction. The second-degree murder statute under which Myers was convicted made "a design to effect the death of the person killed or of another" an element of the crime. *State v. Myers,* 53 Wash.2d 446, 448, 334 P.2d 536, 538 (1959). Instruction No. 7 permitted the jury to presume "that the death of the deceased was designed by the defendant" if the defendant had killed the deceased by an act whose "natural and ordinary consequence . . . would be to produce death." Without this presumption, there was scant evidence of a "design to effect the death" of the victim.

Myers signed a statement after three and one-half hours of police interrogation. In that statement, which was placed in evidence at his trial, he admitted having struck the victim on the head with his fist and with a metal bar, but claimed: "I had no intention of killing this man when I left the Tavern with him and I don't know now why I really did kill him. I didn't think he was dead when I left him in the ditch." Trial Transcript at 133. On direct examina-

---

7. Although the opinion of the court in *Isaac* was that of only four of the ten en banc judges, Chief Judge Edwards explicitly joined that portion of the court's opinion dealing with "the cause and prejudice issues," at 1136, and Judge Jones, in his separate concurrence, agreed that the defendant "had 'cause' not to object to the jury instructions at his trial" because he "neither knew nor could have known that the jury instructions . . . were improper under *Robinson,* decided two years after his trial." *Id.* at 1138.

tion, Myers testified that the slain man had made a homosexual advance toward him, grabbing his head and "tr[ying] to pull me toward him by the hair," and that this had triggered the beating. *Id.* at 219–20. Asked on cross-examination "Why did you have to hit him?", Myers replied: "I was scared and I was mad. I don't know whether I was more scared or more mad." *Id.* at 227.

This evidence is consistent with a "design to effect the death of the person killed." It is equally consistent, however, with the absence of such a design—with the unthinking, half-enraged and half-frightened reaction of a young man who claimed to have previously been subjected to homosexual advances from other convicts in the state prison, Trial Transcript at 211, 224–25, and whom the prosecution itself sought to depict as abnormally sensitive to such advances. *Id.* at 224–25, 229–30. Because the evidence thus lent itself to such conflicting interpretations on the crucial issue of appellant's intent, the challenged instructions—creating the presumptions that the killing was "without excuse or justification" and that "the death of the deceased was designed by the defendant"—worked "prejudice" on appellant sufficient to meet the demands of *Wainwright v. Sykes.*[8]

We conclude that the appellant's failure to raise his constitutional objections to the jury instructions on direct appeal do not preclude federal habeas corpus review of those objections in the instant proceeding. Accordingly, we must consider whether there are other grounds sufficient to sustain the district court's entry of summary judgment in favor of the respondents.

### III.

The district court did not state its basis for granting summary judgment, but re-

spondents had presented that court with three arguments supporting their summary judgment motion: (1) that Myers is no longer "in custody" under the murder conviction; (2) that appellant's delay in raising the issues he now presents should preclude considering them; and (3) that appellant's contentions were without merit. On this appeal, the State has abandoned the first of these arguments.

The delay argument presented to the district court is somewhat ambiguous; it is not clear whether respondents were actually invoking the rule of *Wainwright v. Sykes.* If they were, our discussion in Part II(E), *supra,* is a sufficient reply. If not, then respondents presumably relied—as they did explicitly in their brief on appeal—on Rule 9(a) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, which provides that:

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

This rule does not mandate dismissal of a tardy petition but leaves it within the court's discretion. Delay alone does not make dismissal proper—even a delay of forty-four years has been held insufficient to justify dismissing a habeas petition. *Hawkins v. Bennett,* 423 F.2d 948 (8th Cir. 1970).[9] Because the appellant's challenge to the jury instructions is based on recent changes in the controlling law that could not have been predicted at the time of his trial, it is clear that even if the State has been prejudiced,[10] appellant "could not have

---

**8.** We are not at this point addressing the question whether the contested instructions actually shift the burden of proof in violation of the due process clause. *See* Part III *infra.* We are concluding only that *if* they do so, appellant suffered actual prejudice from the error.

**9.** *Hawkins* was a stronger case for dismissal than ours: not only was the delay in petitioning for habeas more than twice as long, but "each of the contentions raised by appellant was constitutionally protected at the time of his conviction." 423 F.2d at 951 n.4.

**10.** We express no opinion as to whether the

had knowledge" of the grounds for his petition "by the exercise of reasonable diligence" before the prejudice occurred. Consequently we find that dismissal of appellant's petition is not justified by Rule 9(a).

The State's final argument is that appellant's contentions are without merit. Addressing this argument requires examining the substance of appellant's contention that the jury instructions given at his trial unconstitutionally shifted the burden of proof to the defense on the intent element of second-degree murder.

As previously noted, the statute under which Myers was convicted made "a design to effect the death of the person killed or of another" an element of second-degree murder. *State v. Myers*, 53 Wash.2d 446, 448, 334 P.2d 536, 538 (1959). Myers argues that jury instructions numbers 5 and 7 shifted to the defendant the burden of disproving this element.[11] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The Supreme Court has applied this principle to strike down a state rule under which juries were instructed to presume that an intentional, unlawful killing was murder unless the defendant proved by a preponderance of the evidence that he had acted in the heat of passion on sudden provocation. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The challenged Instruction No. 7 in the instant case, like the jury instructions in *Mullaney v. Wilbur*, placed on the defendant the burden of persuasion with respect to his intent in committing the fatal act. We can see no basis for distinguishing the two situations.

Moreover, while the Washington Supreme Court found it unnecessary to decide whether the instructions Myers attacks were actually unconstitutional,[12] we believe that it would have found the instructions invalid had it ruled on the issue. In *State v. Roberts*, 88 Wash.2d 337, 342, 562 P.2d 1259, 1262 (1977) (en banc), the Washington Supreme Court construed *Mullaney v. Wilbur* to prohibit the use in criminal cases of presumptions that shift to the defendant the burden of persuasion, as opposed to the burden of producing evidence, as to elements of the crime charged.[13] The instruc-

State actually *has* been prejudiced. Respondents, in their summary judgment motion, merely asserted in general terms that "any set of facts which could be marshalled now on retrial would bear only a shadow of the reliability they had when first presented." They offered no specific facts as to witnesses now unavailable, records now inaccessible, or other factors supporting their assertions.

11. The instructions appellant challenges are: [Instruction No. 5] Every killing of a human being is presumed in law to be without excuse or justification. Any matter of excuse or justification that may exist for such killing, if such killing you find to be a fact, is matter of defense and the state is not required to prove to you affirmatively that no such excuse or justification existed. It is required, however, that you be convinced, from all the facts and circumstances surrounding the transaction, beyond a reasonable doubt, that such killing was without justification, as the same has been defined to you in these instructions. [Trial Transcript at 240–41.]
[Instruction No. 7] If the defendant is shown by the evidence beyond a reasonable doubt, to have killed the deceased by an act, the natural and ordinary consequences of which would be to produce death, then it will be presumed that the death of the deceased was designed by the defendant, unless the facts and circumstances of the killing, or the evidence, creates a reasonable doubt whether the killing was done purposely. [Trial Transcript at 243.]

12. The court assumed, without deciding, that the challenged instructions were defective, and held only that the rule invalidating them would not be applied retroactively in a collateral proceeding. *Petition of Myers*, 91 Wash.2d 120, 123–24, 587 P.2d 532, 534 (1979).

13. The burden of producing evidence on an issue is the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue. The burden of persuasion on an issue is the obligation of a party to establish by evidence a requisite degree of belief concerning the issue in the mind of the trier of fact. *See* J. P. McBaine, *California Evidence Manual* § 1413 (2d ed. 1960); *McCormick on Evidence* § 336 (2d ed. 1972); 9 *Wigmore on Evidence* §§ 2485, 2487 (3d ed. 1940).

tions Myers challenges here create presumptions not limited to shifting the burden of producing evidence and would thus be struck down under the *Roberts* standard. The particular instruction at issue in *Roberts* created a presumption that defendant acted "with a design to effect the death" of the victim once it was proved that he had killed another and that the killing was neither justified nor excused. *Id.* at 343, 562 P.2d at 1262. The Washington court held this presumption unconstitutional because the inference "cannot be said to follow 'beyond a reasonable doubt.' " *Id.*[14] A fortiori, the presumption created by Instruction No. 7 in the instant case would be defective, since it permits the jury to presume such a "design" from even fewer proven facts than did the *Roberts* instruction.[15]

[11] We conclude, therefore, not only that respondents have presented no grounds sufficient to sustain the district court's grant to them of summary judgment, but that Myers is correct on the merits in asserting that the jury instructions given at his trial violated the due process clause as interpreted in *Mullaney v. Wilbur.* Erroneous jury instructions will support a collateral attack on a criminal conviction if they so infect the entire trial that the conviction violates due process. *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Quigg v. Crist,* 616 F.2d 1107, 1111 (9th Cir. 1980). We believe that this stringent requirement is satisfied here because the paucity of evidence on the crucial intent issue meant that the defective jury instructions may well have secured appellant's conviction, as discussed in Part II(E) *supra.* *See Tyler v. Phelps,* 622 F.2d 172, 176 (5th Cir. 1980) (*Henderson* standard met because "very little evidence to support [intent] other than the presumption" created by erroneous jury instructions).

Consequently, the judgment of the district court is reversed. On remand, appellant's petition will be held in abeyance for ninety days to allow the State to initiate a new trial if it so desires.

REVERSED AND REMANDED.

NORRIS, Circuit Judge, concurring:

I concur in the result. As I see it, the pivotal issue in this case is whether Myers has made a sufficient showing of "cause" under *Wainwright v. Sykes* to overcome the bar created by his failure to object to the defective jury instruction in the state trial court or on direct appeal. While Myers' current constitutional claim may have been "on the frontier of the criminal law" at the time of his trial, I believe the law of presumptions appeared at that time to be so well settled that Myers could reasonably have believed that raising such a claim would be futile. Accordingly, I conclude that Myers had adequate "cause" for his failure to object to the defective jury instruction. *See Isaac v. Engle,* 646 F.2d 1129 at 1133–1134 (6th Cir. 1980), cert. granted, —— U.S. ——, 101 S.Ct. 3141, —— L.Ed.2d —— (1981). A contrary result would, as Judge Pregerson notes in his opinion, "simply encourage defense attorneys to raise on appeal every conceivable constitutional challenge that might some day be accepted—and thus overload their briefs with unmeritorious issues."

POOLE, Circuit Judge, dissenting:

The majority opinion holds that the values underlying the rule established by the Supreme Court in *Wainwright v. Sykes* are not implicated by Myers' claim of error in certain of his jury instructions, and that therefore the *Sykes* rule does not apply to that claim. The majority further holds that, even if *Sykes* is applicable, its require-

---

**14.** The Washington court read *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), as requiring that the "presumed element must be shown to follow from the facts proven beyond a reasonable doubt 'in light of present-day experience.' " 88 Wash.2d at 343, 562 P.2d at 1262. We intimate no

opinion as to whether this reading of *Barnes* is correct.

**15.** Instruction No. 7 bases the presumption on the mere fact of the killing, while the *Roberts* presumption rested on a killing not justified or excused.

ments are satisfied: in its view, Myers has made out a sufficient showing of "cause" and "prejudice" to overcome the *Sykes* bar to habeas review. From both holdings, I respectfully dissent.

### I. Applicability of Sykes to Myers' Claim

Baldly stated, the majority's position is that where a constitutional claim "had not yet been identified" and was, in fact, "unknown" at the time of trial or direct appeal, the federal interests that prompted adoption of the *Sykes* rule are not involved, and that rule ought therefore not to be applied. The objection to this murky epistemology is that it is not at all clear what is meant by the word "unknown." If the majority truly means by this word to single out those constitutional arguments for which there is no record that they had yet been made or thought of, that is not the case before us. Although the state of Washington accepted such jury instructions as were given in this case at the time of Myers' trial, there was at that same time a significant controversy elsewhere as to the constitutionality of such instructions. *See, e. g., Annot.*, 162 A.L.R. 495, 500 (1946). Indeed, it would not overstate to say that this issue was clearly on the frontier of the criminal law of the time. To suggest that Myers' current constitutional claim was truly "unknown" at the time of his trial simply mischaracterizes the facts.

If the point be pressed to further analysis, I suspect that what the majority really means by "unknown" is something like "unacceptable to that particular court at that particular time." If so, then the majority's formulation stands revealed as an exception to *Sykes* that will surely devour it. The majority has, in effect, absolved defense counsel of the need to establish at trial the basic record heretofore considered natural to professionalism by giving assurance that ripe objections on constitutional grounds need not be made where it seems they will be overruled in the forum, and that *Sykes* will not bar raising them in later habeas proceedings because it is sufficient that tri-

al counsel did not have them in mind, or thought it pointless to give them voice. Such encouragement to "sandbagging" surely frustrates the principles set forth in *Sykes.*

Moreover, it should be remembered that the boundaries of constitutional rights have historically been redefined, patient mete and meter, largely by the efforts of diligent and thoughtful attorneys who search for and raise "new" but logical and reasonable extensions of previously established, or at least suggested, doctrines. This is important to the values we place on competence in advocacy in the larger aim for fair trial. The majority, it seems to me, ignores or denigrates these fundamental aspects of our legal system by the suggestion that it is unreasonable to expect the defense to raise objections at trial that are thoughtful and creative, rather than mere rote recitations of hornbook legal principles. The majority also takes too limited a view of the comity interests involved in this situation: unless the objection was truly so far ahead of its time that its conception would have been visionary, I think that the state trial court is entitled to an opportunity to consider it before it may provide the basis for reversal on federal habeas. Foresight of this level does not, as the majority seems to fear, accrue only to legal prophesy: it hallmarks also the able defender.

In sum, it is my opinion that the values underlying *Sykes* are clearly implicated in these circumstances, and that the majority opinion has dealt airily with those values. I would require Myers to satisfy the *Sykes* cause and prejudice requirements before raising his claim in this habeas proceeding.

### II. The Sykes Requirements

The majority offers an alternative basis for reversal in this case, perhaps reflecting uneasiness with its holding above. It holds that Myers has satisfied the *Sykes* cause and prejudice requirements. "Cause" exists for Myers' failure to raise his objection because, the assertion goes, the utility of any such objection would depend on changes in the prevailing law. I do not agree that this

constitutes adequate cause under *Sykes.* The Supreme Court in that case sought to establish a rule that would ensure that all reasonable arguments be raised in the trial court. For the reasons given above, I believe that the issue Myers now brings could reasonably have been expected to be raised in the trial court. That the courts of the state had expressed their disinclination to sustain the objection can only serve to satisfy the cause requirement of *Sykes* if we propose henceforth, under today's convenient analysis, to except that requirement out of existence.

I would affirm the denial of the writ to Myers on the grounds indicated above.