**Glenn Ruphert GIBSON,**
**Plaintiff-Appellee,**

v.

**James SPALDING, Slade Gorton and Dixie Lee Ray,**
**Defendants-Appellants.**

No. 80–3522.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1981.

Decided Oct. 30, 1981.*

Rehearing and Rehearing En Banc Denied Jan. 5, 1982.

* Lodged with clerk's office October 13, 1981.

J. Robin Hunt, Seattle, Wash., for defendants-appellants.

John B. Midgley, Seattle, Wash., for plaintiff-appellee.

Before WALLACE and TANG, Circuit Judges, and STEPHENS,** District Judge.

WALLACE, Circuit Judge:

Spalding, et al. (the State), appeal from an order of the district court granting a writ of habeas corpus to Gibson pursuant to 28 U.S.C. § 2254. The State contends that Gibson's failure to object to a constitutionally infirm jury instruction during trial or on direct appeal prevented the district judge from granting this collateral relief. We disagree and affirm.

## I

On May 29, 1974, a jury found Gibson guilty of murder in the second degree resulting from the death of a female hitchhiker. Gibson appealed his conviction on grounds other than the one asserted in his petition for writ of habeas corpus. The Washington State Court of Appeals affirmed his conviction in an unpublished opinion on June 9, 1975. On that same day, the United States Supreme Court decided *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 308 (1975) (*Mullaney*), in which the Court held that a jury instruction requiring malice aforethought to be presumed from an intentional homicide unless the defendant proved that he acted in the heat of passion on sudden provocation violated the due process clause of the Fourteenth Amendment. The Court found that such an instruction improperly shifted the burden of persuasion from the prosecution to the defense.[1] The *Mullaney* decision was published the next day in United States Law Week, 43 U.S.L.W. 4695 (1975). The following day, the Criminal Law Reporter printed the full text and a summary and analysis of the decision. [1975] 17 Crim.L. Rep. (BNA) 1041–42; 3063. Although a similar instruction was given to the jury in Gibson's trial, there was no objection during trial and no assignment of error in his initial appeal.

Gibson, still assisted by counsel, filed a petition for review before the Washington Supreme Court on August 20, 1975, but once more the jury instruction was not raised as an issue. The Washington Supreme Court summarily rejected Gibson's petition on October 7, 1975. Despite the four month interval between the *Mullaney* decision and the Washington Supreme Court's action, there was no attempt to seek reconsideration of the state Supreme Court's denial of Gibson's petition.

In March of 1978, Gibson filed a personal restraint petition—the Washington equivalent of a habeas corpus petition. He raised for the first time his contention that the jury instruction given at his 1974 trial violated *Mullaney*, and thus entitled him to a new trial. The Washington Court of Appeals denied his habeas corpus petition in an unpublished opinion on April 9, 1979. The court also denied Gibson's motion for reconsideration of its decision. In September of 1979, the Washington State Supreme Court summarily denied Gibson's petition for review of the court of appeals' decision.

Gibson then sought federal habeas corpus relief pursuant to 28 U.S.C. § 2254. His sole ground for relief was that the trial court erred in giving the challenged instruc-

---

** Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

1. The Supreme Court held *Mullaney* fully retroactive in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). The Court, however, left open a way for the states to avoid the full retroactive application of the *Mullaney* rule by stating in a footnote in *Hankerson* that:

> [t]he States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. *See, e. g.*, Fed.R.Crim.Proc. 30. *Id.* at 244 n.8, 97 S.Ct. at 2345.

tion which, he contends, was condemned by *Mullaney.* The district court assigned the case to a magistrate who recommended that the district court grant petitioner's relief. The district court accepted the magistrate's findings without comment, and issued an alternative writ requiring Gibson's release or retrial.

## II

The State argues that Gibson's failure at both his trial and on direct appeal to attack the suspect jury instruction was not excused by "cause" or "prejudice" sufficient to invoke the exception to *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (*Sykes*). In *Sykes,* the Court held that a federal habeas petitioner is barred from asserting that federal constitutional law was violated in a state court proceeding when that assertion was not resolved on the merits in a state proceeding due to the petitioner's own failure to raise it there, as required by a state contemporaneous objection rule. The Court found that absent a showing of "cause" for the failure to object and actual "prejudice" to the petitioner from the alleged constitutional violation, federal habeas relief was precluded by the state procedural default.

Washington courts have developed a similar procedural rule on the appellate level. The Washington Supreme Court has held that "issues which could have been raised on appeal but were not, may not be used as grounds for a collateral attack on a criminal judgment." *Petition of Myers,* 91 Wash.2d 120, 122, 587 P.2d 532, 533 (1978) (en banc), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979). Here, there was no objection during trial or on direct appeal. Gibson argues, however, that we must carefully scrutinize the procedural ground that the state proposes as a bar to federal habeas review. He contends that the procedural rule involved in the instant case does not qualify as an "adequate" state ground because: (1) state review was refused on state procedural, rather than federal substantive grounds; (2) the rule did not give adequate notice at the time of the default that failure to raise the claim would be a waiver; (3) the rule was unforeseeable; (4) the rule is not a contemporaneous objection rule because it applies to a failure to object made on appeal; and (5) the rule is applied inconsistently and arbitrarily.

We recently examined the applicability of the *Sykes* rule to a similar factual situation in *Myers v. Washington,* 646 F.2d 355 (9th Cir. 1981) (*Myers*). There, the habeas petitioner challenged a jury instruction similar to the instruction involved in the case before us. When Myers was tried for murder in 1957, the instruction was considered constitutional. We found that the procedural default involved in the *Myers* case differed substantially from the procedural default involved in *Sykes. Myers* involved a failure to raise on appeal a constitutional issue that had never been identified at the time of trial or at the time of direct appeal, not simply a failure to object during trial to an alleged error that should have been apparent at that time. We raised the question of the applicability of the procedural default rule in *Sykes* to the *Myers* case. *Id.* at 359–60. We also discussed the interests identified in *Sykes* that are advanced by requiring the federal habeas court to comply with a state contemporaneous objection rule. First, federal compliance "enables the judge who observed the demeanor of [the] witnesses to make the factual determinations necessary for properly deciding the federal constitutional question." *Sykes, supra,* 433 U.S. at 88, 97 S.Ct. at 2507. Second, were the federal habeas court not to enforce the contemporaneous objection rule, lawyers might be encouraged to "sandbag"—take their chances on a verdict of not guilty in a state trial court with the intent, if they lose, to raise the constitutional claim before a federal habeas court. *Id.* at 89, 97 S.Ct. at 2508. Finally, adherence to a state contemporaneous objection rule maintains integrity in the state judicial process by encouraging that state trial proceedings be as free from error as possible. *Id.* at 90, 97 S.Ct. at 2508. We found that none of those interests were implicated in a situation where the procedural default consists of a failure to raise on appeal a constitutional

issue that was impossible for the defendant to recognize at the time the appeal was taken. *Myers, supra,* 646 F.2d at 359.

We then tested whether *Myers* met the *Sykes* cause and prejudice requirements, and found both clearly met. *Id.* at 360. However, whether we treat the *Sykes* rule as inapplicable to the *Myers* situation or consider those circumstances sufficient to satisfy the "cause" and "prejudice" requirements of *Sykes* is unimportant. The case before us is distinguishable from *Myers.* The Washington Court of Appeals affirmed Gibson's conviction on the same day that the Supreme Court held in *Mullaney* that a jury instruction similar to the one used in Gibson's trial was unconstitutional. With the aid of his attorney, Gibson petitioned the Washington Supreme Court for review. At that time there was no assignment of the jury instruction as error, even though the *Mullaney* opinion had been published in U.S. Law Week and the Criminal Law Reporter over two months previous to his petition. Two months later, the petition was denied by the Washington Supreme Court. Thus, this situation is clearly distinguishable from *Myers.* Gibson and his attorney had a four month period in which to raise the jury instruction issue before the Washington Supreme Court. It is possible in such a situation that a defense attorney may intentionally omit an argument while preparing his appeal with the intent of saving the issue for federal habeas consideration. In addition, adherence to the contemporaneous objection rule in the instant situation encourages the state appeals court to enforce strictly its own rule because the state court will not be faced with the possibility that a federal habeas court will later ignore the rule and decide the constitutional question "without the benefit of [the state's] views." *Sykes, supra,* 433 U.S. at 90, 97 S.Ct. at 2508. We need not examine in detail each of Gibson's arguments with respect to the inapplicability of the *Sykes* rule, as we hold it clearly applies.

We conclude, however, that Gibson has made a sufficient showing of "cause" and "prejudice" to satisfy the *Sykes* rule and overcome the bar to federal habeas review. He has asserted two separate grounds for meeting the cause requirement. First, on the authority of *Myers* he argues that cause for his failure to raise the constitutional issue on direct appeal exists because the change in the law on jury instructions occurred after he had filed his direct appeal. *See Isaac v. Engle,* 646 F.2d 1129, 1133–34 (6th Cir. 1980) (en banc) (plurality opinion), *cert. granted,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). As we have previously discussed, however, we do not find that the case before us fits within *Myers* since Gibson had over four months after the *Mullaney* decision in which to raise the jury instruction argument before the Washington Supreme Court.

Gibson also argues that his failure to object was due to the ineffective assistance of counsel. In *Garrison v. McCarthy,* 653 F.2d 374 (9th Cir. 1981), we recently discussed how the "cause" prong of *Sykes* applies when the procedural default occurs as a result of action or inaction of the petitioner's counsel. We distinguished an attorney's failure to object for tactical reasons from an attorney's failure to object based upon his or her inadvertence or ignorance of the law. We held that in those cases involving a tactical decision, the defendant cannot meet the "cause" prong of *Sykes* unless he or she can show that the attorney's decision not to object amounted to a Sixth Amendment violation. *Id.* at 378. In dicta, we suggested that in cases involving attorney inadvertence or ignorance of the law, a defendant may satisfy the cause prong with proof short of that necessary to make out a Sixth Amendment claim. *Id.*

We cannot fathom any tactical reason for Gibson's attorney's failure to raise the *Mullaney* objection in this case. The only reason we can perceive from the record for the failure of Gibson's attorney to call it to the attention of the state court at some point during the four-month interval between the filing of his appeal and the court's decision is that he was unaware of the decision. Gibson has met his burden of satisfying the cause prong of *Sykes.* There is no reason to

remand this case for an evidentiary hearing.

Gibson has also made a sufficient showing of "prejudice." In *Myers*, we held that the prejudice prong of *Sykes* was satisfied because of "the crucial role the challenged jury instructions could have played in securing appellant's conviction." *Myers, supra,* 646 F.2d at 360. No evidence was required. The Supreme Court recognized the critical role that the burden of proof plays in a criminal proceeding in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). There, the Court held that due process requires the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime." *Id.* at 364, 90 S.Ct. at 1072.

The State argues that the district court erred in finding that Gibson was prejudiced by the instruction based upon the fact that the magistrate presumed prejudice on an inadequate record. We disagree. The jury was instructed that if the State proved a homicide beyond a reasonable doubt, the presumption was that it was a murder in the second degree. The jury was further instructed that in order to reduce the charge to manslaughter, the defendant had the burden of proving the existence of mitigating circumstances.[2] Thus, the instruction shifted the burden to the defendant on the crucial element of intent. Gibson's defense was based upon his contention that the victim's death was not due to any intentional act on his part, but was instead due to the victim's ingestion of lethal amounts of drugs and alcohol. It is impossible to determine accurately what effect the instruction had on the jury's verdict. Given the critical role that the burden of proof plays in a criminal trial, we were justified in *Myers* in holding that prejudice was demonstrated in the giving of the instruction itself. Thus, the district court could properly conclude that Gibson was prejudiced and no evidentiary hearing was necessary.

### III

In light of our conclusion that Gibson has made a sufficient showing of "cause" and "prejudice" under *Sykes,* we must now consider whether the jury instruction given at his trial unconstitutionally shifted the burden of proof to him to produce evidence sufficient to reduce the charge from second degree murder to manslaughter.

In *Mullaney,* the Supreme Court held unconstitutional a state rule under which juries were instructed to presume that an intentional, unlawful killing was murder unless the defendant proved by a preponderance of the evidence that he had acted in the heat of passion on sudden provocation. We held in *Myers* that an instruction similar to the one given in this case was indistinguishable from the unconstitutional instruction in *Mullaney.*[3] In fact, the State concedes that the challenged instruction is unconstitutional. Thus, we hold, as we did in *Myers,* that the jury instruction given at Gibson's trial violated the due process clause as interpreted in *Mullaney.* Thus, the district court correctly issued the alternative writ requiring the release of Gibson or a new trial.

AFFIRMED.

2. The jury was instructed as follows:
   The Court instructs you that where a homicide is proved beyond a reasonable doubt, the presumption is that it is murder in the second degree. If the state desires to increase the degree to murder in the first degree, the burden is on the state to produce evidence of those facts or circumstances which call for such increase. If the defendant desires to reduce the degree to manslaughter, the burden is on him to produce evidence of those facts and circumstances which call for such reduction.

3. The challenged instructions in *Myers* also shifted the burden of proof to the defense on the intent element of second-degree murder. *Myers v. Washington,* 646 F.2d 355, 362 & n.11 (9th Cir. 1981).