George E. MYERS, Petitioner-Appellant,

v.

STATE OF WASHINGTON, et al.,
Respondents-Appellees.

No. 80–3031.

United States Court of Appeals,
Ninth Circuit.

March 28, 1983.

Poole, Circuit Judge, dissented and filed opinion.

Samuel D. Ellis, San Francisco, Cal., for petitioner-appellant.

David R. Minikel, Olympia, Wash., for respondents-appellees.

Previously decided May 26, 1981, 646 F.2d 355 (9th Cir.1981).

Before PREGERSON, POOLE and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

This case is before us on remand from the Supreme Court. *Washington v. Myers,* 456 U.S. 921, 102 S.Ct. 1964, 72 L.Ed.2d 436 (1982). The Court vacated an earlier opinion, *Myers v. Washington,* 646 F.2d 355 (9th Cir.1981), and remanded for further consideration in light of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Both of the recent Supreme Court decisions and *Myers,* the instant case, involve the same type of situation—a collateral attack on a criminal conviction, based on alleged violations at trial of legal rules that were not announced until after the trial and the direct appeal. Thus in all three cases no objections to the alleged trial errors were made at trial or on appeal.

In the instant case, appellant Myers challenged certain of the jury instructions given at his trial, contending that they improperly shifted to him the burden of disproving an element of the charged offense. In our previous decision, we held that, even if appellant's failure to object to the jury instructions at trial or on appeal brought into play the rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977),[1] appellant had satisfied that rule by

---

1. *Sykes* held that failure to comply with a state's contemporaneous-objection rule consti-    tuted independent and adequate state grounds

demonstrating "cause" for his procedural default and "actual prejudice" from the allegedly improper instructions.[2] *Isaac* and *Frady seem*, at first glance, to call into question both the cause and the prejudice parts of our earlier holding.

In *Isaac*, state criminal defendants petitioned for federal habeas relief on the ground that the instructions given at their trials, allocating to them the burden of proof on their claims of self-defense, violated the Due Process Clause. The defendants had not challenged the constitutionality of those instructions at trial, and had thus violated an Ohio rule requiring contemporaneous objection to jury instructions. The Supreme Court held that this procedural default barred the defendants from obtaining federal habeas relief because they could not satisfy the "cause" requirement of *Sykes*. The Court rejected defendants' argument that they could not have known at the time of their trials that the Due Process Clause addresses the burden of proving affirmative defenses. It also rejected the idea that since Ohio had long required criminal defendants to bear the burden of proving affirmative defenses, failure to object at trial should be excused because such objection would have been futile. Thus, *Isaac* seems, at first glance, to cast doubt on our earlier holding in *Myers* that " '[c]ause' for appellant's failure to raise his constitutional argument on direct appeal exists because that argument depends on changes in the prevailing law on presumptions and burdens of proof occurring many years after the appeal." 646 F.2d at 360.

In *Frady*, a federal criminal defendant based a § 2255 collateral attack on his murder conviction on the argument that the jury instructions on malice were erroneous and had eliminated any possibility of a

manslaughter verdict. Frady had not objected to the malice instructions either at trial or on direct appeal. The Supreme Court first held that the D.C. Circuit had erred in applying the "plain error" standard of Fed.R.Crim.P. 52(b), rather than the "cause and prejudice" standard, to this collateral attack. Then, in the portion of its opinion relevant here, the Court held that Frady did not satisfy the "prejudice" prong of the latter standard. This holding might be thought to undermine the holding in the instant case that Myers *had* satisfied the "prejudice" prong of the test.

Despite initial appearances, however, we believe that neither *Isaac* nor *Frady* requires—or even reasonably suggests—reversing our previous decision in *Myers.*

In *Isaac*, the Supreme Court was quite careful *not* to rule out the possibility that where a jury instruction is held unconstitutional after a defendant's trial and appeal, that holding might provide sufficient "cause" for defendant's failure to object to the instruction at trial or on appeal: "We need not decide whether the novelty of a constitutional claim ever establishes cause for a failure to object." 102 S.Ct. at 1573.[3] Instead of laying down such a general rule, the Court said merely that *in the particular cases before it,* "respondents' claims were far from unknown at the time of their trials," so that those defendants did not have good cause for failing to press their claims at trial. *Id.* The defendants should have known at the time of their trials that the self-defense instructions were open to due process attack because the basis for that attack, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), was "decided four-and-one-half years *before* the

---

barring federal habeas relief absent a showing of "cause" for the failure and "actual prejudice" to petitioner from the alleged violation.

**2.** The majority opinion expressed doubt as to whether the *Sykes* rule actually did apply to a situation like appellant's—failure to raise on appeal a constitutional issue that had not yet been identified. 646 F.2d at 359–60.

**3.** The court indicated that it was not happy with the idea of flatly declaring that the novelty of a claim could never constitute "cause" for not having raised it earlier. "We might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim." 102 S.Ct. at 1573.

first of respondents' trials." 102 S.Ct. at 1573.[4]

This cannot be said about appellant Myers. Like the defendants in *Isaac*, he contends that instructions given at his trial improperly shifted the burden of proof on an element of the offense charged. But Myers' trial occurred in 1957 and his appeal was decided in 1959—both more than a decade before *Winship*. Consequently the Supreme Court's reason for finding no "cause" in *Isaac* is inapplicable to *Myers*.[5] Nor does the State of Washington, in its Supplemental Brief on Remand, give any good reason for believing that Myers should have been aware at trial or on appeal that the instructions potentially violated due process.[6]

*Frady* appears to have even less bearing on the instant case than *Isaac* does. The Supreme Court found that Frady suffered no significant actual prejudice from the im-

proper malice instructions because his sole defense at trial was to deny any involvement with the killing at all. Frady had never argued that he *was* involved but lacked the malice needed for a murder conviction; thus the incorrect instruction on malice played no role in his conviction:

> [T]he strong uncontradicted evidence of malice in the record, coupled with Frady's utter failure to come forward with a colorable claim that he acted without malice, disposes of his contention that he suffered such actual prejudice that reversal of his conviction 19 years later could be justified. We perceive no risk of a fundamental miscarriage of justice in this case.

102 S.Ct. at 1596.

By contrast, appellant Myers did not argue that he had nothing to do with the killing; he conceded killing the victim but

---

**4.** Winship held that the Due Process Clause requires proof beyond a reasonable doubt of every element of an offense.

**5.** The Supreme Court in *Isaac*, as discussed above, also rejected the idea that "cause" for failure to make a timely objection might consist in the "futility" of such an objection under the then-existing state of the law. Our earlier opinion in *Myers* does *not* rely on this "futility" argument to support its conclusion that "cause" for the procedural default existed. The only hint of that argument in *Myers* occurs in the portion of our opinion that suggests (without holding) that *Sykes* is inapplicable to Myers' situation. We said: "Nor is it plausible to fear 'sandbagging' [the fear animating *Sykes*] in a case where the defense attorney in preparing an appeal omits what appears at the time to be a futile constitutional argument." 646 F.2d at 360. When it comes to the holding that "cause" exists, we said: " '[c]ause' for appellant's failure to raise his constitutional argument on direct appeal exists because that argument depends on changes in the prevailing law on presumptions and burdens of proof occurring many years after the appeal." *Id.* This is the "appellant couldn't possibly have known" rationale, not the "objection would have been futile" rationale.

**6.** The State contends that "under Washington State law, there was well established precedent holding that an instruction was erroneous if it cast the burden upon the accused." But the three cases cited in support do not demonstrate that Myers ought to have known in 1957, when he was tried, or in 1959, when his appeal was

decided, that the instructions he now attacks violated due process.

*State v. Thomas,* 58 Wash.2d 746, 364 P.2d 930 (Wash.1961), was decided *after* Myers had been convicted and his appeal denied. *State v. Moser,* 37 Wash.2d 911, 226 P.2d 867 (Wash. 1951), did hold that it was error to instruct the jury that flight raised a presumption of guilt. But the reason was *not* any general due process rule against shifting the burden of proof on an element of the offense—indeed, the erroneous instruction did not talk about any element of the offense—but simply that flight was only *one* circumstance that the jury was supposed to consider in deciding on guilt or innocence. *State v. Pilling,* 53 Wash. 464, 102 P. 230 (Wash.1909), comes closest to supporting the proposition the State advances, because there the court did say that, while the erroneous instruction might not have raised a conclusive presumption, "it at least cast the burden of proof upon the appellant," and this was sufficient to render it erroneous. *Id.* 102 P. at 231. But the court then implied that the faulty instruction did after all amount to a conclusive presumption: "[W]hen the court informed [the jurors] that the law presumed guilt from the facts stated, they might well conclude and perhaps did conclude that a verdict of guilty was the only alternative." *Id.* 102 P. at 232. A single sentence in an ambiguous opinion, decided five decades before Myers' appeal, hardly constitutes "well established precedent that an instruction was erroneous if it cast the burden upon the accused."

introduced evidence from which lack of the intent element of second degree murder could have been inferred. (He testified that he killed the victim after a homosexual advance that angered and frightened him. 646 F.2d at 361.) We found that, aside from the incorrect jury instruction on intent, "there was scant evidence of a 'design to effect the death' of the victim," a necessary element of the offense. *Id.* at 360.

Thus neither *Isaac* nor *Frady* provides good reason to reach a different result in the instant appeal.

REVERSED AND REMANDED.

POOLE, Circuit Judge, dissenting.

Again I must dissent as I did originally in *Myers v. Washington,* 646 F.2d 355 (9th Cir.1981) (*Myers I*).

In *Myers I,* I thought and said that the majority was wrong in its insistence that the objection which Myers had not presented at his trial (that the instruction of which

he complains violated the due process clause) was not barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The majority proclaimed, and now reiterates, that in the decade of the Sixties lawyers who tried criminal cases in state courts were generally not aware that a jury instruction which shifted to the defendant in murder cases the burden of negating malice aforethought raised serious constitutional problems. This is simply not so, as any veteran lawyer who tried such cases during that time can attest. The professional skill and concern which clients have a right to expect from lawyers who undertake representation in the gravest of felonies most certainly included the understanding that such constitutional issues were at hand and needed to be asserted for the sake of the person on trial. I repeat, it is not true that competent counsel were mainly unaware of the constitutional implications.[1]

1. A prime collection in the historical lore appears in the discussion by Justice Brennan in *In re Winship,* 397 U.S. 358, 361–362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970), the decision referred to extensively in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975):

> The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The "demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula 'beyond a reasonable doubt' seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt." C. McCormick, Evidence § 321, pp. 681–682 (1954); see also 9 J. Wigmore, Evidence § 2497 (3d ed. 1940). Although virtually unanimous adherence to the reasonable-doubt standard in common-law jurisdictions may not conclusively establish it as a requirement of due process, such adherence does "reflect a profound judgment about the way in which law should be enforced and justice administered." *Duncan v. Louisiana,* 391 U.S. 145, 155 [88 S.Ct. 1444, 1451, 20 L.Ed.2d 491] (1968).
>
> Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. See,

for example, *Miles v. United States,* 103 U.S. 304, 312 [26 L.Ed. 481] (1881); *Davis v. United States,* 160 U.S. 469, 488 [16 S.Ct. 353, 358, 40 L.Ed. 499] (1895); *Holt v. United States,* 218 U.S. 245, 253 [31 S.Ct. 2, 6, 54 L.Ed. 1021] (1910); *Wilson v. United States,* 232 U.S. 563, 569–570 [34 S.Ct. 347, 349, 58 L.Ed. 728] (1914); *Brinegar v. United States,* 338 U.S. 160, 174 [69 S.Ct. 1302, 1310, 93 L.Ed. 1879] (1949); *Leland v. Oregon,* 343 U.S. 790, 795 [72 S.Ct. 1002, 1005, 96 L.Ed. 1302] (1952); *Holland v. United States,* 348 U.S. 121, 138 [75 S.Ct. 127, 136, 99 L.Ed. 150] (1954); *Speiser v. Randall,* 357 U.S. 513, 525–526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460] (1958). *Cf. Coffin v. United States,* 156 U.S. 432 [15 S.Ct. 394, 39 L.Ed. 481] (1895). Mr. Justice Frankfurter stated that "[i]t is the duty of the Government to establish * * * guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in this historic, procedural content of 'due process.'" *Leland v. Oregon, supra,* [343 U.S.] at 802–803 [72 S.Ct., at 1009] (dissenting opinion). In a similar vein, the Court said in *Brinegar v. United States, supra* [338 U.S.] at 174 [69 S.Ct., at 1310], that "[g]uilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with the standard.

Trial lawyers of the Sixties knew about constitutional objections, and competent—not just visionary—lawyers voiced those and all other possible objections in order to preserve their record. The fact is that such objections were indeed made, but the bar did not resort to eventual federal habeas relief so frequently as is now routine. The failure to follow up does not mean that the knowledge was absent.

In *Myers I* this panel's majority supported its holding by reference to *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980), wherein a majority of that court en banc held that Isaac's late constitutional claims were not barred under *Wainwright.* The Supreme Court reversed that case. *Isaac v. Engle,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The Supreme Court also vacated the decision in *Myers I* and remanded to us "for further consideration in light of *Isaac v. Engle* * * * and *United States v. Frady,* 456 U.S. 152 [102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)."

The majority seems now to have concluded that *Isaac v. Engle,* which it cited and upon which it placed reliance in *Myers I,* is after all not even relevant to the issue. This is a convenient if not exceedingly enlightened sort of rationalization. But it cannot justify dispensing with the Supreme Court's direction to us—a direction which did find both *Engle* and *Frady* on point—and I believe we are bound by the clear intimations of that court's mandate. It simply will not do for us to review and conclude that the Supreme Court engaged in an idle act. It may well be that we know a better rule, but I thought that had been settled since the days of John Marshall.

These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Davis v. United States, supra* [160

U.S.] at 488 [16 S.Ct., at 358], stated that the requirement is implicit in "constitutions * * [which] recognize the fundamental principles that are deemed essential for the protection of life and liberty." * * *