[No. 45343.   En Banc.   December 7, 1978.]

*In the Matter of the Personal Restraint of*
GEORGE C. MYERS, *Petitioner.*

*David L. Shorett,* for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *Joanne Y. Maida, Deputy,* for respondent.

HICKS, J.—George Myers petitions[1] for release from personal restraint or for a new trial on several grounds. The matter was certified here by the Court of Appeals on the issue of the application of the rules on presumptions enunciated in *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). We deny the petition.

Myers was arrested at 1 p.m., May 20, 1957. Twelve hours later he signed a statement that he had beaten Sigurd Oliver with his fists and a heavy object and left him alongside the road. Oliver had been found dead about 8 a.m., May 18, in the area where Myers admitted leaving him.

---

[1]The petition was filed under the recently adopted personal restraint petition procedure set forth at RAP 16.3 *et seq.* That procedure superseded the appellate procedure formerly available for a petition for writ of habeas corpus. RAP 16.3(b). While we are not concerned with habeas corpus as such in this case, we are guided by the same principles which were applicable under that doctrine.

Myers was subsequently tried before the Honorable Eugene A. Wright[2] and convicted of murder in the second degree. From that conviction he appealed (*State v. Myers,* 53 Wn.2d 446, 334 P.2d 536 (1959)), and we affirmed the trial court. Myers was represented at trial by a battery of three attorneys and on appeal by a fourth attorney, all of whom were competent.

Now, some 20 years later, by a fifth attorney, he petitions for release from personal restraint for the following reasons: (1) his confession, which was introduced at trial, was involuntary and therefore inadmissible; (2) he was prejudiced by publicity during his trial; (3) he was denied counsel at a critical state of the proceedings, *i.e.*, a televised confession; (4) the prosecution failed to disclose, until the time of trial, information which was favorable to him; and (5) instructions given in his case were unconstitutional under *State v. Roberts, supra.* None of these contentions was made in *State v. Myers, supra.*

■ A personal restraint petition requires the court to adjudicate whether the petitioning prisoner is presently detained in violation of either the United States Constitution or the Constitution of the State of Washington. RAP 16.4(c)(2). However, while we examine both state and federal questions, we do so in the light of this state's procedural rules. *See Massey v. Rhay,* 76 Wn.2d 78, 455 P.2d 367 (1969). While the federal courts may, in a subsequent *federal* habeas corpus action, choose to disregard state procedural requirements, we are free to apply our own rules in the independent *state* action. *See Fay v. Noia,* 372 U.S. 391, 426–35, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963).

■ One such rule is that issues which could have been raised on appeal but were not, may not be used as grounds for a collateral attack on a criminal judgment. *Massey v. Rhay, supra.* This rule is based on the principle that habeas corpus is not a substitute for appeal.

[2]Currently serving as circuit judge, Ninth Circuit Court of Appeals.

We find this rule applicable to the first four grounds alleged by Myers. Each of those alleged infirmities was apparent either before trial or prior to the end of trial, and each could have been raised on appeal. Since none of the claimed errors was raised, none provides a ground for Myers' release from personal restraint. *Massey v. Rhay, supra.*

As to the issue of the instruction of the jury, a slightly different question is presented. The instructions[3] currently challenged were generally considered to be proper statements of the law at the time of trial. Accordingly, the exceptions taken at trial and pressed on appeal did not reach the constitutional issue now urged.

Since the time that Myers' conviction became final, subsequent decisions have formulated new constitutional rules that invalidate an instruction if it shifts the burden of proof from the prosecution to the defense on any element of the crime alleged. *State v. Roberts, supra; Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). The rule in *Mullaney* was applied retroactively in a case pending on direct appeal. *Hankerson v. North Carolina,* 432 U.S. 233, 53 L. Ed. 2d 306, 97 S. Ct. 2339 (1977).

Assuming the challenged instructions in the present case are defective under *Roberts* and *Mullaney,* the question is whether this new rule should be applied retroactively to

---

[3]Instruction No. 5: "Every killing of a human being is presumed in law to be without excuse or justification. Any matter of excuse or justification that may exist for such killing, if such killing you find to be a fact, is matter of defense and the state is not required to prove to you affirmatively that no such excuse or justification existed. It is required, however, that you be convinced, from all the facts and circumstances surrounding the transaction, beyond a reasonable doubt, that such killing was without justification, as the same has been defined to you in these instructions."

Instruction No. 7: "If the defendant is shown by the evidence beyond a reasonable doubt, to have killed the deceased by an act, the natural and ordinary consequence of which would be to produce death, then it will be presumed that the death of the deceased was designed by the defendant, unless the facts and circumstances of the killing, or the evidence, creates a reasonable doubt whether the killing was done purposely."

this collateral review proceeding. The importance of finality in a rational system of justice leads us to conclude that it should not.

In cases on direct appeal, we have uniformly reviewed questions of constitutional dimension, even though they were not raised at trial. *See, e.g., State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968); *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977). This, however, represents an exception to the general rule that error not brought to the attention of the trial court at a time when it could have been corrected is precluded from consideration on appeal.

> "One may not elect voluntarily to submit his case to a jury satisfactory to him, and then, after an adverse verdict, for the first time on appeal claim error which, if it did exist, could have been cured or otherwise redressed by some action on the part of the trial court."

*State v. Case,* 49 Wn.2d 66, 72, 298 P.2d 500 (1956). *See also Seattle v. Harclaon,* 56 Wn.2d 596, 354 P.2d 928 (1960). The exception is based on the recognition that constitutional error may adversely affect the fundamental right to a fair trial, which right outweighs the benefit to the state of the procedural requirement. *State v. Ruzicka, supra.*

When the claimed error is raised by way of collateral attack on the judgment, we believe a different balance must be struck. When a trial has been held, a conviction affirmed on appeal, and a period of time thereafter elapses, we believe the negative effect on the administration of justice outweighs the interest of a defendant in having his guilt redetermined in accordance with subsequent decisions of this court or the United States Supreme Court.

Evidence necessary for retrial may no longer be extant. Witnesses may have moved or died and memories certainly will have dimmed. Further investigation, difficult at best, may well be impossible. Such factors could, and in this case probably would, make effective retrial of Myers impossible. If another trial is to be conducted in this case with the consequent burdens on the judicial and prosecutorial

resources it undoubtedly would be less reliable than the first.

Aside from the difficulties associated with this individual case, we must also consider the consequence of the retrial of all cases in which similar instructions were used. The United States Supreme Court has recognized that state procedural rules may be applied to mitigate the impact of numerous retrials.

> If the validity of such burden–shifting presumptions was as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. . . . The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, *e.g.,* Fed. Rule Crim. Proc. 30.

*Hankerson v. North Carolina, supra* at 244 n.8.

Reopening a case carries disadvantages for the state and also for those who have been convicted.

> Both the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community.

*Sanders v. United States,* 373 U.S. 1, 24–25, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963) (Harlan, J., dissenting). *See also Hankerson v. North Carolina, supra* at 246 (Powell, J., concurring in the judgment).

We find that the interest of the state in achieving a final judgment not subject to the frustrations associated with retrial years after the original proceeding outweighs any interest in readjudicating convictions according to subsequently developed legal standards. Executive clemency and the parole system are available for those cases that are particularly deserving. Accordingly, we hold that the general rule—*i.e.,* the failure to identify errors at trial or prosecute

them on appeal precludes reliance thereon in subsequent proceedings—applies to alleged errors raised for the first time on collateral attack.

It is our view that the petition of George Myers fails to demonstrate that he is restrained in violation of either the United States Constitution or the Constitution of the State of Washington and, therefore, his petition is denied.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Reconsideration denied February 2, 1979.