[Nos. 48452-0, 48501-1. En Banc. March 3, 1983.]

*In the Matter of the Personal Restraint of* IAIN CHRISTOPHER HEWS, *Petitioner.*

*In the Matter of the Personal Restraint of* SAMUEL PIETRO EVANS, *Petitioner.*

*John Henry Browne,* for petitioner Hews.

*Samuel Pietro Evans,* pro se.

*Norm Maleng, Prosecuting Attorney for King County, Chris Quinn–Brintnall, Deputy, C. J. Rabideau, Prosecuting Attorney for Franklin County,* and *Pamela Cameron, Deputy,* for respondent.

*Wayne Lieb,* amicus curiae for petitioner Evans.

STAFFORD, J.—Petitioner Iain C. Hews seeks review of a Court of Appeals opinion which held a Personal Restraint Petition collaterally attacking the validity of his guilty plea was procedurally barred by *In re Haynes,* 95 Wn.2d 648, 628 P.2d 809 (1981).

The State seeks review of a Court of Appeals opinion which granted a Personal Restraint Petition and vacated the guilty plea of Samuel P. Evans, relying on *In re Keene,* 95 Wn.2d 203, 622 P.2d 360 (1980).

Since two Divisions of the Court of Appeals have reached inconsistent results on similar issues, we granted review. We reverse the Court of Appeals in both instances.

I

PETITIONER HEWS

Hews was charged with first degree felony murder stemming from an unsuccessful robbery attempt which ended in the death of the victim. As the result of a plea bargain the information was amended to charge second degree murder. On March 13, 1970, Hews entered a plea of guilty to the amended charge.

The following colloquy between the judge and Hews constitutes the factual basis upon which the trial court accepted the guilty plea.

> The Court: Mr. Hews, how old are you now?
> The Defendant: Seventeen, Your Honor.
> The Court: You have conferred with Mr. Guterson, your attorney, have you?
> The Defendant: Uh–huh.
> The Court: I guess you know the charge against you is Murder in the First Degree and the attorney and the prosecutor are offering to me that I sign an order which would allow them to change the charges against you to

Murder in the Second Degree. Have you discussed that with your attorney?

The Defendant: Yes, Your Honor.

The Court: And you are aware that if you are charged with Murder in the Second Degree that means that intending to kill someone you did in fact take their life. You understand that?

The Defendant: *Does that mean I intended to kill somebody?*

The Court: Yes, that means you did an intentional act that you intended to kill them but that you didn't premeditate it, hadn't planned it.

The Defendant: *I can't say that—I didn't intend to kill anybody.*

The Court: Tell me what happened, young man.

The Defendant: I came in out of the alley and they were coming up the street and I hold [sic] them up. One of them went down and one came up the hill with me. He didn't come up the hill with me, he forced me up the hill about ten paces in front of me. And then I ran up this little hill. He waited until I got to the top and ran up. I started running and he chased me and I was sick. I knew I couldn't escape.

The Court: You said you had tried to hold him up?

The Defendant: Yes.

The Court: I think this young man knows what he is charged with and I think that those facts as he has recited them to me legally constitute Murder in the Second Degree. Counsel thinks so?

Mr. Guterson: I do in every respect, Your Honor, and I am satisfied that the Defendant legally appreciates his peril and understands the original charge and amended charge, and that as an attorney and officer of the court I can assure the Court that I feel that the best advice that I am capable of giving him, I am satisfied is doing what is in his best interests.

The Court: From the statement he has made and from the testimony that I have heard from the doctor I am satisfied that he knows what he is charged with and that he knows what took place and that what took place did in fact amount to Murder in the Second Degree, so that if he chose to plead guilty to it it is because he is guilty of it as a matter of fact and this is what I must insist upon in order to do my job.

You may arraign him on the Amended Information.

Mr. Guterson: We have already acknowledged receipt thereof, Your Honor, of a certified copy of the Amended Information and are prepared to waive the reading thereof, inasmuch as the Court has already indicated the subject matter thereof and I am satisfied that the Defendant understands the substance of the charge and I believe as his attorney that he is fully prepared and equipped at this time to enter a plea to the Amended Information charging Second Degree Murder.

(Italics ours.)

The court then informed Hews of the rights he would be waiving by entering a plea of guilty.

> The Court: Mr. Hews, it is important that you understand, and I think you do because you have a good lawyer, but I want to make sure you do, that you have a right to a jury trial on any of these charges. You know that, don't you?
>
> The Defendant: Uh–huh.
>
> The Court: If you tell me you want a jury trial I would order the matter tried and a jury would determine what the facts are, and I want to make sure you understand that you have a right to have a trial by a jury. Do you?
>
> The Defendant: I do.
>
> The Court: And if you enter a plea then you don't have a right to appeal from what I do and you have to accept the penalty that I impose and so after a trial one has a right to appeal; after a plea one does not have a right to appeal, one has to accept then what the Judge does. And in a case of this nature the judge may decide that you go to the penitentiary and, if so, you have to accept that. You understand that?
>
> The Defendant: Uh–huh.
>
> The Court: From this young man's conduct I agree with the psychiatrist that he knows what is happening, he understands it and he knows the gravity of it.
>
> What is your plea, Mr. Hews, to the charge of Murder in the Second Degree?
>
> The Defendant: I plead guilty, Your Honor.
>
> The Court: I will accept that plea. I am confident that he is receiving justice and knows what he is doing.

We note the trial court informed Hews he was charged

with second degree murder which meant he "intended" to kill someone and did in fact take a life. At that juncture Hews exclaimed "I can't say that—I didn't intend to kill anybody". Although he admitted attempting to "hold up" the victim, the foregoing recitation of the facts reveals considerable confusion on Hews' part. Hews was sentenced to life imprisonment.

On October 27, 1981, the present Personal Restraint Petition was filed with Division One of the Court of Appeals. It appears to have been the first challenge of the guilty plea. The Court of Appeals dismissed the petition because the issues could have been raised on appeal, but were not. Accordingly, the petition was deemed a collateral attack on the judgment, contrary to the dictate of *In re Haynes, supra.*

Without question, Hews failed to appeal the issues now raised in his Personal Restraint Petition. It is equally clear the petition's challenge of the guilty plea is a collateral attack thereon. These factors standing alone, however, do not prevent appellate review if the interest in finality of judgments is outweighed by claims of constitutional error actually prejudicing the petitioner.

Beginning with *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978) and continuing through *In re Lee,* 95 Wn.2d 357, 623 P.2d 687 (1980) and *In re Haynes,* 95 Wn.2d 648, 628 P.2d 809 (1981), this court adhered strictly to the principle that issues, constitutional or nonconstitutional, which were known or could have been known but were not raised at trial or on appeal, may not be raised in a collateral attack by a Personal Restraint Petition. The *Myers–Haynes* line of cases recognize a strong policy interest in the finality of judgments.

A dilemma arises when this interest must be weighed against a constitutional error that actually prejudices one who resorts to a Personal Restraint Petition. The need for reaching a balance in such cases was recognized in part in *In re Keene, supra,* and *In re James,* 96 Wn.2d 847, 640 P.2d 18 (1982). Unfortunately, these cases when combined

with the *Myers–Haynes* line of cases appear to have confused the issue, as illustrated by the conflicting views reached in these consolidated cases.

■■ We recently addressed the dilemma in *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982). It was recognized therein that a Personal Restraint Petition is not a substitute for an appeal. We observed that collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders. These are significant costs which require that collateral relief be limited. *Hagler,* at 824. Nevertheless, without abandoning the *Myers–Haynes* line of cases, we concluded their rule was "too blunt an instrument for the delicate operation of determining claims which should be given collateral review". *Hagler,* at 826. The rule had caused inconsistent application in cases where the interest in finality of judgments was outweighed by constitutional errors actually prejudicing the petitioner. As pointed out in *Hagler,* at page 826, under such circumstances we have in fact reviewed constitutional issues not raised on appeal. *See In re James, supra; In re Keene, supra;* and *In re Schellong,* 94 Wn.2d 314, 616 P.2d 1233 (1980).

In *In re Hagler,* at page 826, we recognized that the *Myers–Haynes* rule is out of step with the federal courts. As was pointed out, it has created the possibility that "'our state's personal restraint procedure will come to be viewed as a necessary exhaustion of state remedies, rather than as a method by which serious constitutional claims may be heard'". *In re Hagler,* at 826 (quoting from *In re James, supra* at 856 (Utter, J., concurring)).

Following the federal guideline, *Hagler* adopted a new rule for Personal Restraint Petitions. As in the federal cases, we held the petitioner has the burden of demonstrating an actual prejudice created the alleged constitutional error. Neither the petitioner in *Hagler* nor the petitioner in the companion case (In re Polk, consolidated in 97 Wn.2d 818, 650 P.2d 1103 (1982)) was able to show actual preju-

dice. We therefore specifically left open "the issue of whether we will consider a personal restraint petition in which the petitioner *can* show he was prejudiced by an error of constitutional dimensions which was not raised on appeal". (Italics ours.) *In re Hagler,* at 827. The instant Personal Restraint Petition raises the issue heretofore reserved in *Hagler.*

We hereby hold the failure to raise a constitutional issue for the first time on appeal is no longer a reason for automatic rejection of a Personal Restraint Petition. Therefore, the State's contention that Hews has waived the right to challenge his guilty plea is without merit. Having determined that Hews is not procedurally barred from bringing his Personal Restraint Petition, we must proceed to determine whether he has shown actual prejudice stemming from a constitutional error.

The constitution requires that a plea of guilty be knowing, intelligent and voluntary. *Henderson v. Morgan,* 426 U.S. 637, 644–45, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976). A plea is voluntary in the constitutional sense if the accused understands the nature and extent of the constitutional protections waived by pleading guilty. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). The accused must also be apprised of the nature of the charges against him, "the first and most universally recognized requirement of due process". *Henderson v. Morgan, supra* at 645. The Supreme Court has further stressed that a plea cannot be voluntary "unless the defendant possesses an understanding of the law in relation to the facts". *McCarthy v. United States,* 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). *See also United States v. Johnson,* 612 F.2d 305, 309 (7th Cir. 1980). "At a minimum . . . [an accused] would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime." *State v. Holsworth,* 93 Wn.2d 148, 153 n.3, 607 P.2d 845 (1980). As pointed out in *Henderson v. Morgan, supra* at 647 n.18, "intent is such a critical element of the offense of second–degree murder that notice of that

element is required". In other words, an accused must not only be informed of the requisite elements of the crime charged, but also must understand that his conduct satisfies those elements.

Without question the trial court informed Hews of the element of intent necessary for second degree murder but it was at this point that acceptance of the plea went awry. Hews stated specifically: "I didn't intend to kill anybody". At this juncture it became evident Hews was confused whether his conduct satisfied the critical element of intent. Unfortunately, the trial court's record does not explain or clarify this confusion.

We are therefore constrained to hold that, on the meager record before us, petitioner Hews has submitted a prima facie case demonstrating that his plea was constitutionally invalid. An invalid plea of guilty constitutes actual prejudice.

Reviewing courts have three options in evaluating Personal Restraint Petitions:

1. If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed;

2. If a petitioner makes at least a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand the petition for a full hearing on the merits or for a reference hearing pursuant to RAP 16.11(a) and RAP 16.12;

3. If the court is convinced a petitioner has proven actual prejudicial error, the court should grant the Personal Restraint Petition without remanding the cause for further hearing.

Because we find petitioner Hews has made at least a prima facie case showing actual prejudicial constitutional error, the Court of Appeals is reversed and the cause is remanded for transfer to the appropriate trial court for a hearing on the merits pursuant to RAP 16.11(a) and RAP

16.12.[1] This being a collateral review, petitioner has the burden of establishing that, more likely than not, he was actually prejudiced by the claimed error. *In re Hagler,* at 826.[2]

## II
### PETITIONER EVANS

The record indicates Samuel Evans was released from the Washington State Penitentiary for confinement at the Tri–Cities Work and Training Release Center. His Personal Restraint Petition concedes that while there he was authorized to go fishing with some friends on July 4, 1974, and did not return.

Upon his failure to return to confinement, the prosecuting attorney filed an information on July 9, 1974, charging Evans with:

the Crime of Escape (RCW 72.65.070) committed as follows, to–wit: That . . . Evans . . . on or about the 5th day of July, 1974, . . . wilfully, unlawfully and feloniously while being . . . a prisoner of the Division of Institutions . . . did . . . fail to return to his designated place of confinement, to–wit: Tri–Cities Work and Training Release Center . . . at or before the time specified . . .

RCW 72.65.070 under which Evans was charged provides in pertinent part that:

Any prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be

---

[1]It should be noted that at the time the issue in Hews' case was heard, the Court of Appeals did not have the benefit of *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982), which recognized the need to balance the State's interest in finality of judgments against a consideration of petitioner's constitutional claim of actual prejudice.

[2]Since this case is pre–*Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976), the trial court is not limited thereby. The court may consider the totality of the circumstances surrounding the hearing. This may include the nature of the bargain for which the plea was given, the actual advice imparted by defense counsel, and any other fact that may be developed pertaining to Hews' knowledge of his constitutional rights, his awareness of the acts and requisite mental state necessary to constitute the crime as well as the ultimate voluntariness of his plea.

deemed an escapee . . .

Thus, the term "escape" is defined by the statute that designates the crime.

Evans was found in Utah a year later and was returned to the Washington State Penitentiary. The matter came on for arraignment on August 15, 1975, at which time Evans acknowledged he had received a copy of the information, that he had read it and had discussed it with his lawyer. Upon Evans' statement that he was ready to plead the trial judge took his plea of guilty.

Evans also filled out a "Statement of Defendant on Plea of Guilty" in which he stated, among other things:

I plead guilty to the crime of Escape, R.C.W. 72.65.070.

Thereafter, the trial judge noticed Evans had failed to complete the Statement and instructed him to write, in his own words, what he had done to commit the crime charged in the information. Evans wrote:

I escaped from the Tri–Cities Work Release Facility in Pasco on July 5, 1974.

After questioning Evans concerning his understanding of the consequences of his plea, the court inquired:

The Court: You have indicated here that you escaped from the Tri–City Work Release—I can't read that—Facility in Pasco on July 5th, is that correct?
Evans: Yes.
The Prosecutor: That was a year ago, Your Honor, 1974.

The court then accepted Evans' plea.

Evans did not appeal but in 1981 filed the instant Personal Restraint Petition with Division Three of the Court of Appeals. The Court of Appeals found merit in the petition on the ground that the record failed to provide a sufficient factual basis to support a guilty plea. The Court of Appeals vacated the judgment and remanded the cause for entry of a new plea.

The State petitioned for review asserting (1) the validity of a guilty plea may not be challenged initially in a Personal Restraint Petition; and (2) the Court of Appeals erred

in holding there were not sufficient facts in the record to support a voluntary guilty plea.

Contrary to the State's contention, we stated in Hews, above, that a guilty plea may be challenged initially in a Personal Restraint Petition under a proper constitutional and factual setting. The task of the Court of Appeals is to determine whether the petitioner has made at least a prima facie case demonstrating actual prejudice stemming from constitutional error. In the absence of a prima facie showing, the Personal Restraint Petition should be dismissed. We hold Evans failed to meet his critical burden. Thus, the Court of Appeals erred in failing to dismiss Evans' Personal Restraint Petition.

To satisfy the requisite burden, petitioner Evans must show he suffered actual prejudice by pleading guilty to the crime with which he was charged. The basic question is whether Evans' plea was knowing, intelligent and voluntary. *Henderson v. Morgan, supra.* To answer this basic question, one must take a realistic approach to the facts as they existed on July 5, 1974 (the date Evans departed for Utah) and August 15, 1975, when he was returned to this state and arraigned.

It is obvious that Evans was well aware of his failure to return to his place of confinement on July 5, 1974. This is conceded in his Personal Restraint Petition. Further, it would stretch logic to assume that, after a year's absence from the work release center, the failure to return to confinement was anything but knowing.

Without question the record must reflect that the accused understood the nature of the charge and that he understood his conduct constituted the crime charged. *McCarthy v. United States, supra; In re Keene, supra.* In the instant case, Evans entered a plea to an information which clearly specified that he was charged with "the Crime of Escape (RCW 72.65.070)", a statutorily defined crime. Thereafter the information specifically outlined the conduct said to constitute the crime of "escape".

Evans does not contend the acts alleged in the informa-

tion do not constitute the crime of escape. Rather, he appears to assert his plea, which in essence says "I plead guilty to escape", does not contain sufficient facts to demonstrate he understood his conduct constituted escape. We do not agree.

Evans' statements should not be considered out of context. The record shows he received a copy of the information, read it and discussed it with his lawyer. Further, it is clear the information, in addition to the charge of "escape", sets out with specificity Evans' conduct which constituted the crime of escape. Thus, Evans' guilty plea did more than acknowledge guilt to the mere title of a crime. Evans admitted having committed the crime as set forth fully and correctly within an information which he had read and discussed with his lawyer. In fact, the Statement of Defendant on Plea of Guilty signed by Evans in the presence of his lawyer, the prosecuting attorney and the judge says in part:

> 6. I plead guilty to the *Crime of Escape,* RCW 72.65-.070 *as charged in the information,* a copy of which I have received.
>
> . . .
>
> 13. . . . I escaped from the Tri–Cities Work Release Facility in Pasco on July 5th, 1974.

(Italics ours.)

Evans' bare statement might not, standing alone, expressly contain all elements of the crime of escape. But, a fair reading of his statement in the context of the information (which Evans read and discussed with his lawyer) to which Evans pleaded guilty and which is a part of the record contained a factual basis sufficient to support a valid plea. Consequently, we hold there were sufficient facts in the record to support a voluntary plea of guilty. Evans has therefore failed to make a prima facie showing of actual prejudice.

The Court of Appeals is reversed and the cause is remanded for reinstatement of the judgment and sentence heretofore ordered vacated by the Court of Appeals.

## III

The disposition of Hews and Evans, herein, completes the task begun in *In re Hagler, supra.* A petitioner will no longer be automatically barred from employing a Personal Restraint Petition to collaterally attack a guilty plea evidencing *actual* prejudice arising from constitutional error.

Henceforth it will be necessary for the court considering a Personal Restraint Petition to make a threshold determination by focusing on the existence of actual prejudice arising from constitutional error. The burden of proving *actual* prejudice rests with the petitioner. *Possible* prejudice will not be sufficient.

As set forth above, a reviewing court has three options depending on the extent to which the petitioner has demonstrated *actual* prejudice arising from constitutional error. We emphasize that in the absence of at least a prima facie case, however, a Personal Restraint Petition must be dismissed.

*In re Myers, supra, In re Lee, supra,* and *In re Haynes, supra,* are overruled insofar as they are inconsistent with *In re Hagler* and these consolidated cases.

WILLIAMS, C.J., UTTER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—While I concur in the disposition of the personal restraint petition of Evans, I disagree with the result reached by the majority in Hews and dissent. The majority asserts "Hews has submitted a prima facie case demonstrating that his plea was constitutionally invalid." Majority, at 88. Given the circumstances at the time of Hews' guilty plea, I believe the record is overwhelming there was no prejudice.

The courtroom colloquies of Hews, the judge, and Hews' counsel are included in the majority and need not be repeated. To this I would add the statement of C. Richard Johnson, M.D., a psychiatrist who examined Hews on several occasions and testified as to Hews' competency to enter

a plea. In response to further questioning from the court, Dr. Johnson stated:

> Iain at this point and through the time that I have seen him has evidenced a trust in his attorney and a willingness to cooperate with his attorney in the preparation of his defense. Iain does know what he is charged with and the circumstances of what was involved and does realize the jeopardy that he is in as a result of these charges, and it is these basic considerations that lead me to feel that he is competent.

Hews was before the court on a plea bargain. The colloquy recorded in the majority opinion and the statement of Dr. Johnson demonstrate that Hews intelligently, understandingly, unequivocally, and voluntarily entered a plea of guilty, pursuant to a plea bargain, to a charge of murder in the second degree. Although defendant did represent to the court he "didn't intend to kill anybody", his statements on the record show there was a criminal liability for murder in the first degree committed by means of a felony murder during the course of a robbery. When what is disclosed by the record is considered with the other circumstances of the case—that this was a plea bargain to second degree murder; and that Hews had the expert counsel of a highly skilled and competent attorney, as well as the observation and questioning of an experienced trial judge—I believe his claim, now nearly 13 years after the original hearing, that the plea of guilty is somehow tainted with unconstitutionality is without substance.

Hews made his bargain. He ought to be held to it even though he understandably may be weary of life at the Washington State Reformatory. *State v. Majors,* 94 Wn.2d 354, 616 P.2d 1237 (1980).

Under *In re Hagler,* 97 Wn.2d 818, 827, 650 P.2d 1103 (1982), some prejudice which rises to "an error of constitutional dimensions which was not raised on appeal" must be

shown. I find no such prejudice here and thus I dissent.

BRACHTENBACH and DIMMICK, JJ., concur with DOLLIVER, J.