# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 55486-1-II |
| ISAIAS G. RAMOS-RAMIREZ, | |
| Petitioner. | UNPUBLISHED OPINION |

CRUSER, A.C.J. – Isaias G. Ramos-Ramirez seeks relief from personal restraint following his jury trial convictions for first degree child molestation, indecent liberties, and second degree incest. In this timely personal restraint petition (PRP),[1] he argues that he was denied effective assistance of counsel on several grounds, that a key witness' testimony was false, and that cumulative error deprived him of a fair trial. Because Ramos-Ramirez fails to adequately support his claims or they fail on the merits, we deny this petition.

## FACTS

### I. BACKGROUND

At approximately 7:13 to 7:15 PM on March 10, 2017, Officer Hector Diaz was patrolling a transit center when he observed Ramos-Ramirez "kissing" and "heavily making out with" "a small child" outside of a nearby Safeway store. Verbatim Report of Proceedings (VRP) at 71-72.

---

[1] Ramos-Ramirez's direct appeal mandated on February 25, 2020. Mandate, *State v. Ramos-Ramirez*, No. 50911-3-II (Wash. Ct. App. Feb. 25, 2020). He filed this PRP on February 22, 2021, less than a year after the mandate. Accordingly, this PRP is timely. RCW 10.73.090(1), (3)(b).

The child was later determined to be Ramos-Ramirez's son, who was less than eight years old at the time of the incident.

Diaz pulled up behind Ramos-Ramirez and watched as Ramos-Ramirez held his son between his legs and forced the child's face towards his face. Diaz observed Ramos-Ramirez place his tongue in the child's mouth and move it back and forth, lick the child's neck, caress the child's buttocks, and thrust his body against the child. Unable to get Ramos-Ramirez's attention, Diaz drove around until he was in front of Ramos-Ramirez.

Upon contacting Ramos-Ramirez, Diaz observed a vodka bottle and could smell the "odor of intoxicants . . . coming off" of Ramos-Ramirez. *Id.* at 81. Ramos-Ramirez appeared to be intoxicated to the point he was "difficult to understand." *Id.* at 124. Diaz also observed that Ramos-Ramirez's pants zipper was down. But Diaz did not notice whether Ramos-Ramirez had an erection.

Diaz separated the child from Ramos-Ramirez and observed that the entire side of the child's face was wet with saliva. After other officers arrived, Diaz took the child to his mother.

In his incident report and probable cause report, Diaz described the above facts. And in his incident report, Diaz also stated that he later transported Ramos-Ramirez to the hospital to be medically cleared for booking. While at the hospital, Ramos-Ramirez spit at staff, was uncooperative, and threatened to beat up a doctor.

Two individuals who worked at the transit center, John Magerstaedt and Steven Weisenbach, had observed Ramos-Ramirez's interactions with his son. Magerstaedt and Weisenbach both provided witness statements in which they stated that they had observed Ramos-Ramirez and another person who appeared to be a small woman "making out quite heavily" and

"kissing and hugging." PRP App. at C11, C12. They did not realize until later that the small person was a child. In his statement, Weisenbach stated that when he first noticed that the police had arrived on the scene, he believed that the officer he saw was "Officer Olsen." *Id.* at C11.

Shortly after the incident, the child was interviewed by forensic interviewer Sue Villa. In her report, Villa stated that during the interview she spoke to the child with the assistance of an interpreter and that "[i]t was unusually difficult to get [the child] to use words to communicate, and when he did he primarily communicated in one word responses." *Id.* at E1. Villa further reported that the child acknowledged that he remembered the police talking to him and his father at the Safeway, but he "denied memory of anything happening with his [father]." *Id.* at E2. The child also "said his [father] was good." *Id.* And he "said the entire family sleeps together at night in the same bed," but he "denied any bad experiences occurring in the family home." *Id.*

## II. CHARGES, OMNIBUS ORDER, AND TRIAL

The State initially charged Ramos-Ramirez with first degree child molestation. In the State's omnibus application, the State included the following paragraph:

> The defendant is put on notice that the following additional charges will be filed prior to trial if this matter is not resolved by plea on or before the pre-trial date: Incest 2, Indecent Liberties, Sexual Motivation Enhancement.

*Id.* at F5.

In the trial court's subsequent omnibus order, Ramos-Ramirez acknowledged that he had reviewed this paragraph. Ultimately, the State charged Ramos-Ramirez with first degree child molestation, indecent liberties, and second degree incest.

In a supplemental omnibus application, the State disclosed that it intended to present testimony from Halimah Gradney, a woman who had also witnessed Ramos-Ramirez's

3

interactions with his son and had requested that a Safeway store manager call the police. Before trial started, defense counsel had informed the trial court that Villa was a potential witness.

The case proceeded to a jury trial. Diaz, Magerstaedt, Weisenbach, and Gradney testified consistently with their reports, their statements, and the proposed testimony described above. In addition, Diaz testified that he did not call for backup until after he had separated Ramos-Ramirez and his son. And Weisenbach testified that he now recognized that the officer he first saw at the scene of the incident was Diaz.

Ramos-Ramirez's son testified at trial. The child testified that he did not know old he was, when his birthday was, what grade of school he was in, how many years he had been going to school, or his mother's name. Apart from asking the child these general questions, the only other question the State asked him was if his father was present in the courtroom. The child identified Ramos-Ramirez as his father. Defense counsel did not cross examine the child.

Defense counsel did not call any witnesses.

In closing argument, defense counsel argued that although Ramos-Ramirez may have touched his son in an offensive manner, he did not touch his son in a sexual manner. Counsel argued that although offensive touching might be an assault, Ramos-Ramirez was not charged with assault and, therefore, the jury should acquit him because all three charges required proof of sexual contact and the State had failed to prove that any sexual contact occurred.

The jury convicted Ramos-Ramirez of first degree child molestation, indecent liberties, and second degree incest.

### III. APPEAL AND PRP

Ramos-Ramirez appealed his convictions and his sentence. *State v. Ramos-Ramirez*, No. 50911-3-II, slip op. at 1 (Wash. Ct. App. Dec. 18, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050911-3-II%20Unpublished%20Opinion.pdf. In his appeal, he argued "that defense counsel was ineffective for failing to request a voluntary intoxication jury instruction." *Id.* at 7. We rejected this argument, holding that in light of the defense's trial theory, Ramos-Ramirez had "failed to show that there was no strategic reason to not request the intoxication instruction." *Id.* at 9.

Ramos-Ramirez then filed this PRP. After the State filed a response and Ramos-Ramirez filed a reply, we appointed counsel and counsel filed additional briefing.

### ANALYSIS

### I. PRP PRINCIPLES

We have three options when reviewing a personal restraint petition. We may: "(1) dismiss the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). A reference hearing "is appropriate where the petitioner makes the required prima facie showing[,] 'but the merits of the contentions cannot be determined solely on the record.' " *Yates*, 177 Wn.2d at 18 (quoting *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *Id.* Bald assertions and conclusory allegations are insufficient. *Id.* And the factual allegations must be based on more than speculation and conjecture. *Id.*

A declaration from the petitioner can support a PRP if the declaration is based on personal knowledge. *See In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 481, 965 P.2d 593 (1998); *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). And if the evidence supporting a claim is based on knowledge in the possession of others, the petitioner must present their affidavits with admissible statements or other corroborative evidence. *Rice*, 118 Wn.2d at 886.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Ramos-Ramirez argues that he was denied effective assistance of counsel when defense counsel failed (1) to advise him of his right to testify and refused to allow him to testify when he asked to do so, (2) to investigate a voluntary intoxication defense or a diminished capacity defense, (3) to investigate and review potential impeachment evidence and to impeach Diaz's trial testimony, (4) to investigate and present exculpatory evidence from Villa and Ramos-Ramirez's son, and (5) to inform him of a plea offer.

### A. LEGAL PRINCIPLES

To establish ineffective assistance of counsel, Ramos-Ramirez must demonstrate that (1) defense counsel's performance was deficient and (2) this deficient performance was prejudicial. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). If the petitioner fails to satisfy one prong of this two-part test, we need not consider the other prong. *Id.* at 847.

"Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *State v. Estes*, 188

Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A reasonable probability is one that is sufficient to undermine confidence in the trial's outcome, and it is a lower standard than a preponderance standard. *Id.* In the PRP context, a petitioner who successfully demonstrates prejudice in an ineffective assistance of counsel claim has necessarily shown actual and substantial prejudice sufficient to obtain collateral relief. *Crace*, 174 Wn.2d at 846-47.

B. RIGHT TO TESTIFY

Ramos-Ramirez first argues that he was denied effective assistance of counsel because defense counsel never advised him of his right to testify and refused to allow him to testify when he requested to do so. Ramos-Ramirez states in his unsworn petition and unsworn reply that defense counsel did not advise him of his right to testify, that he advised counsel that he wanted to testify, and that counsel told him that he did not need to testify and therefore would not testify.

But Ramos-Ramirez does not adequately support this claim because he provides no affidavit or declaration establishing these facts and he did not sign his PRP or reply under penalty of perjury.[2] *Pirtle*, 136 Wn.2d at 481; *Rice*, 118 Wn.2d at 886. Because Ramos-Ramirez does not adequately support this claim, it fails.

C. VOLUNTARY INTOXICATION AND DIMINISHED CAPACITY DEFENSES

Ramos-Ramirez next claims that he was denied effective assistance of counsel because defense counsel failed to investigate a voluntary intoxication defense and failed to investigate a diminished capacity defense. Ramos-Ramirez alleges that counsel failed to interview medical

---

[2] We note that appointed counsel did not correct this deficit and solely relies on Ramos-Ramirez's statements in his pro se petition and reply to support the claims in counsel's brief and reply.

personnel and review medical records that were potentially relevant to his level of intoxication or diminished capacity at the time of his arrest.

Ramos-Ramirez provides no support for his claim that counsel failed to interview witnesses or conduct any investigation regarding an intoxication or diminished capacity defense.[3] The nature and scope of defense counsel's investigation was within counsel's knowledge, and Ramos-Ramirez has not provided us with a declaration from counsel. *Rice*, 118 Wn.2d at 886. Because Ramos-Ramirez does not adequately support this claim, it fails.[4]

D. IMPEACHMENT EVIDENCE

Ramos-Ramirez next contends that he was denied effective assistance of counsel when defense counsel failed to review and investigate available discovery evidence that would have enabled defense counsel to impeach Diaz's reports and testimony and failed to impeach Diaz with existing evidence that was inconsistent with his reports and testimony. He contends that reports documenting the calls to the dispatcher, Gradney's proposed testimony, Weisenbach's witness

_____

[3] At best, Ramos-Ramirez presents an unsigned declaration and supporting documents that may demonstrate that defense counsel failed to provide him with his entire file when he requested his file in order to prepare this petition. But it is mere conjecture that the absence of any mention of an investigation in the disclosed file is evidence that counsel did not conduct a reasonable investigation. It does not demonstrate that Ramos-Ramirez has competent admissible evidence of that fact. *Rice*, 118 Wn.2d at 886.

[4] The State argues that we should not address this claim because it was raised and addressed on the merits in Ramos-Ramirez's appeal. In his direct appeal Ramos-Ramirez argued that defense counsel was deficient for failing to request a voluntary intoxication instruction. *Ramos-Ramirez*, No. 50911-3-II, slip op. at 7. Ramos-Ramirez's current claim that defense counsel failed to *investigate* an intoxication or a diminished capacity defense, is not the same issue raised and rejected in the appeal.

statement, and the security video from the transit center would have revealed that Diaz's timeline was falsified and, therefore, demonstrated that Diaz could not have observed the alleged offenses.[5]

As to whether counsel reviewed and investigated any possible discrepancies, that matter is within counsel's knowledge, and Ramos-Ramirez fails to provide an affidavit from counsel supporting these assertions.[6] *Id.* Accordingly, Ramos-Ramirez fails to adequately support his claim that counsel failed to investigate.

As to whether Ramos-Ramirez was denied effective assistance of counsel when defense counsel failed to attempt to impeach Diaz's trial testimony based on any inconsistencies disclosed in the call reports, Gradney's proposed or actual testimony, Weisenbach's witness statement or testimony, or the security video, this claim fails because there were no significant inconsistencies.

Ramos-Ramirez asserts that a Shelton Police Department incident report and a Mason County Emergency Communications Call Detail Report show that Diaz's claim that he was on patrol and not responding to the 911 call when he arrived at the scene at approximately 7:14 or 7:15 PM was false because they prove that he responded to the 911 call at 7:31 or 7:32 PM. But Ramos-Ramirez misconstrues these reports.

---

[5] Ramos-Ramirez also asserts that a review of the 911 call recording would provide additional impeachment evidence, but he does not specify how the 911 call was inconsistent with Diaz's reports or testimony. Accordingly, we need not consider the 911 call recording.

In his pro se reply, Ramos-Ramirez moves for an order requiring the State to provide us with copy of the 911 call recording. Because Ramos-Ramirez does not identify the specific evidence in the recording that would be relevant to his arguments, this motion is denied.

[6] Again, at best, Ramos-Ramirez presents an unsigned declaration and supporting documents that may demonstrate that defense counsel failed to provide him with his entire file when he requested his file in order to prepare this petition. But it is mere conjecture that the absence of any mention of an investigation in the disclosed file is evidence that counsel did not conduct a reasonable investigation. It does not demonstrate that Ramos-Ramirez has competent admissible evidence of that fact. *Rice*, 118 Wn.2d at 886.

These reports establish that Diaz *reported* the incident at 7:31 or 7:32 PM; they do not state that Diaz was responding to a 911 call at that time.[7] This timing is consistent with Diaz's reports and his testimony that he happened upon Ramos-Ramirez and the child at approximately 7:15 PM while he was on patrol, that he watched them for a period of time, that he then drove around and contacted them, and that he did not call for backup until after he had physically separated Ramos-Ramirez and the child.

Similarly, Gradney's proposed and actual testimony was not inconsistent with Diaz's reports or testimony. In the State's supplemental omnibus application, the State asserted that Gradney would testify that she had walked past Ramos-Ramirez and the child and had observed Ramos-Ramirez holding the child and trying to "[F]rench kiss" the child as the child tried to pull away. PRP App. at C9. After seeing this, she went into the Safeway store and requested that the manager call the police. When she and the store manager came out of the store, the police were already there. But nothing in the omnibus application specifies when this occurred or when any 911 call was placed. The mere fact the police were at the scene by the time Gradney left the store after requesting assistance is not inconsistent with Diaz independently encountering Ramos-Ramirez and the child before the 911 call was placed.

Additionally, Gradney's trial testimony was consistent with the summary of her proposed testimony. And she did not testify about the exact time she requested that the manager call for help; she testified only that she had observed Ramos-Ramirez sometime between 7:00 and 8:00

---

[7] The security video also shows that the first patrol car arrived on the scene at approximately 7:13 PM, a second patrol car arrived about 7:19 PM, and two additional patrol cars arrived 7:32 PM. The arrival of the last two patrol cars is consistent with Diaz reporting the incident at 7:31 PM.

PM. Thus, neither Gradney's proposed testimony nor her actual testimony were inconsistent with Diaz's report or testimony.

Ramos-Ramirez also asserts that Weisenbach's witness statement demonstrated that he saw "Officer Olsen" rather than Diaz arrive at the scene and that this was inconsistent with Diaz's report and testimony in which Diaz claimed to be the first officer at the scene. PRP App. at C11. In his witness statement, Weisenbach did state that he saw "Officer Olsen" arrive at the scene. *Id.* But at trial Weisenbach stated that he now recognized that officer as Diaz. Thus, Weisenbach's testimony was consistent with Diaz's report and testimony.

We have also reviewed the security video and find no inconsistencies with Diaz's reports and testimony.

Because the call reports, Gradney's proposed and actual testimony, Weisenbach's testimony, and the security video were not inconsistent with Diaz's reports or testimony, defense counsel had no ground upon which to impeach Diaz at trial. Accordingly, Ramos-Ramirez does not establish that he was denied effective assistance of counsel on this ground.

E. EXCULPATORY EVIDENCE

Ramos-Ramirez next argues that he was denied effective assistance of counsel when defense counsel failed to interview Villa or the child and failed to cross examine the child about the incident or call Villa as a witness.

As to Ramos-Ramirez's claim that defense counsel failed to interview Villa or the child, Ramos-Ramirez again fails to provide adequate support for that claim because whether counsel interviewed these witnesses is within counsel's knowledge and Ramos-Ramirez does not provide

an affidavit from defense counsel to support this claim.[8] *Rice*, 118 Wn.2d at 886. Because Ramos-Ramirez fails to adequately support this claim, it fails.

As to Ramos-Ramirez's claim that counsel should have cross-examined the child about the incident, that claim fails. The scope of cross examination is limited to the subject matter of the direct examination, and the State did not question the child about the incident. ER 611(b). Thus, defense counsel could not have elicited testimony about the incident on cross examination and any failure to do so does not establish ineffective assistance.

Ramos-Ramirez also fails to show that any potential error in deciding not to call Villa as a witness was prejudicial. Even if Villa had testified that the child "denied memory of anything happening with his" father outside the Safeway and that the child denied any bad experiences occurring in the family home, given the eyewitness observations there is no reasonable probability that the outcome of the proceedings would have been different had the jury heard this testimony. PRP App. at E2. Accordingly, this claim fails.

Ramos-Ramirez also argues that he was denied effective assistance of appellate counsel because appellate counsel failed to raise this claim on direct appeal. "To prevail on a claim of ineffective assistance of appellate counsel, [petitioner] must demonstrate the merit of any legal issue appellate counsel . . . failed to raise and also show [ ]he was prejudiced." *In re Pers. Restraint*

---

[8] Once again, at best, Ramos-Ramirez presents a declaration and supporting documents that may demonstrate that defense counsel failed to provide him with his entire file when he requested his file in order to prepare this petition. But it is mere conjecture that the absence of any mention of any interviews with Villa or the child in the disclosed file is evidence that counsel did not conduct a reasonable investigation. It does not demonstrate that Ramos-Ramirez has competent admissible evidence of that fact. *Rice*, 118 Wn.2d at 886.

*of Netherton*, 177 Wn.2d 798, 801, 306 P.3d 918 (2013). Because Ramos-Ramirez fails to demonstrate the merit of this claim, his ineffective assistance of appellate counsel claim also fails.

F. PLEA OFFER

Ramos-Ramirez further argues that he was denied effective assistance of counsel when defense counsel failed to inform him of a plea offer from the State. He contends that the State's omnibus application reveals that an offer existed, and he asserts that counsel never communicated this offer to him.

The State's omnibus application contained the following paragraph:

> The defendant is put on notice that the following additional charges will be filed prior to trial if this matter is not resolved by plea on or before the pre-trial date: Incest 2, Indecent Liberties, Sexual Motivation Enhancement.

PRP App. at F5. Although this paragraph advised Ramos-Ramirez of the consequences of not resolving the case by a plea, it does not state that the State ever conveyed a plea offer. Without additional evidence that the State actually conveyed a plea offer, such as a declaration from counsel or the prosecuting attorney, this claim is not adequately supported.

Furthermore, even if the State's omnibus application was sufficient to establish that there was a plea offer, Ramos-Ramirez does not adequately support his claim that no offer was ever conveyed to him. He relies solely on his statements in his unsworn PRP. Because he provides no affidavit or declaration establishing these facts and he did not sign his PRP under penalty of perjury this claim fails.[9] *Pirtle*, 136 Wn.2d at 481; *Rice*, 118 Wn.2d at 886.

---

[9] We note that Ramos-Ramirez's appointed counsel did not correct this deficit and relies solely on Ramos-Ramirez's unsworn statements in his pro se petition to support this claim.

### III. FALSE TESTIMONY

Ramos-Ramirez next contends that he was denied due process and his right to a fair trial because Diaz's testimony was false and the State knowingly presented this false testimony. Ramos-Ramirez argues, as he did in his similar ineffective assistance of counsel claim, that the call reports, Gradney's proposed and actual testimony, Weisenbach's witness statement, and the security video demonstrate that Diaz's testimony about when he initially observed Ramos-Ramirez and the child, and therefore his allegations against Ramos-Ramirez, could not be true. But, as discussed above, Ramos-Ramirez fails to establish any inconsistencies between this evidence and Diaz's testimony. Accordingly, this claim fails.

### IV. CUMULATIVE ERROR

Finally, Ramos-Ramirez argues that cumulative error denied him a fair trial. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Because we hold that all of Ramos-Ramirez's claims are either inadequately supported or fail on the merits, Ramos-Ramirez does not demonstrate cumulative error and this claim fails.

### CONCLUSION

Because Ramos-Ramirez fails to adequately support his claims or they fail on the merits, we deny this petition.

No. 55486-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, A.C.J.

We concur:

_____
MAXA, J.

_____
VELJACIC, J.